# DOMINICK GALLAGHER *vs.* THERESA FLURY AND CLARENCE V. DERR.

*Bill to Enjoin Erection of a Stable—Permit Authorized by Ordinance Not Revocable by Resolution of the City Council—Stable in a City Not a Nuisance per se—Insufficiency of Evidence to Show Special Injury From Erection of Stable.*

Under City Code of Cumberland, ch. 2, sec. 1, it is unlawful to erect in that city any stable or other building without first obtaining from the City Engineer a permit therefor in accordance with the terms of the application.   Sec. 12 forbids the erection of a stable on any lot fronting on any *street*, within thirty feet of the line of the street.   Ch. 3, sec. 22, provides for an appeal when a permit for a building is refused, but no appeal is given when a permit is granted.   Defendant, who owned a lot fronting on an *alley*, applied for a permit to erect thereon a building to contain a coal-house, feed-room, stable and carriage-house.   The permit, as issued authorized the erection of a metal clad carriage-house and coal-shed, in accordance with the terms of the application, but omitted the word stable.   After the grant of this permit the City Council passed a resolution, declaring it cancelled.   Plaintiff filed the bill in this case alleging that the proposed stable would be erected about 12 feet 8 inches from the kitchen in the rear of his lot; that the stable

would be a nuisance to plaintiff and to the neighborhood, by reason of the bad odors from it and the danger from fire, etc., and asked for an injunction to restrain the erection. *Held,* that the permit as granted is to be construed in connection with the application: that the word stable was inadvertently omitted, but its construction was authorized under the permit.

*Held,* further that the subsequent attempt to cancel the permit by the resolution of the City Council was ineffectual, because it was issued under an ordinance generally applicable and the resolution attempted arbitrarily, to deprive plaintiff of the rights given to all other property holders.

A stable in a city is not *per se* a nuisance and the evidence in the case does not show that this stable, when completed, will be a nuisance, in fact, to the plaintiff, or cause him any special injury. The proximity of dwellings to disagreeable structures is an inevitable incident of city life. If the stable should become a nuisance from the manner in which it may be managed, the municipal ordinances provide a remedy by fine and abatement of the nuisance. Consequently in this case the plaintiff is not entitled to an injunction forbidding the erection of the stable.

Neither increased danger of fire, nor increased insurance rates, nor depreciation of property, by the erection of a neighboring lawful building, entitles a party to an injunction restraining the erection of such building.

When a citizen is entitled to certain rights under a general municipal ordinance he cannot be deprived of them by a resolution of the City Council, which excepts him from the operation of the ordinance but leaves it in force.

Appeal from a decree of the Circuit Court for Allegany County (WILLIAMS and WITZENBACHER, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*David J. Lewis* (with whom was *Geo. A. Pearre* on the brief), for the appellant.

*R. T. Semmes.* for the appellee.

PEARCE, J., delivered the opinion of the Court.

The plaintiff below filed a bill in equity in the Circuit Court for Allegany County to restrain the defendants from erecting

a stable upon the property of one of the defendants in their joint possession and occupancy. The bill alleges that the plaintiff owns his residence on Glenn street in the city of Cumberland, fronting twenty-five feet on that street, with a depth of one hundred feet on Lincoln alley (which is twelve feet wide) and running back to Shinbone alley which opens on Lincoln alley and runs parallel to Glenn street; that Mrs. Flury owns a lot fronting on Decatur street at right angles to Glenn street, and running back to Lincoln alley on which it binds forty-one feet and nine-tenths of a foot, opposite the rear part of plaintiff's lot, and that she and her co-defendant, Derr, without a permit therefor as required by an ordinance of the city, have commenced the erection of a stable fronting twenty-eight feet on Lincoln alley, bringing the end of the building twelve feet eight inches from the nearest corner of plaintiff's kitchen in the rear of his dwelling. The bill further alleges that the erection of this stable will not only be a nuisance to the plaintiff, but a common nuisance to the neighborhood, by reason of the bad odors which will arise from it, and the danger from fire on account of keeping hay, straw, and other inflammable material therein, and that the erection of this stable will do irreparable injury to the plaintiffs property, and to his comfort in his home.

The prayer of the bill is for an injunction restraining the defendants from "placing any building material upon the portion of the lot mentioned, or building upon the same in any manner whatsoever," and a preliminary injunction was issued conforming to the prayer of the bill.

The defendants answered, admitting the ownership and occupancy of the two lots as charged, and that they were about to erect a building on that part of Mrs. Flury's lot which abuts on Lincoln alley; that this alley is twelve feet wide, and that plaintiff's kitchen abuts thereon nearly opposite the proposed building, but they denied that it was about to be erected without a permit from the city authorities, and filed with their answer a paper purporting to be a formal application to the Mayor and City Council, in accordance with their require-

ments, for such permit, and also a paper purporting to be a permit for the erection of said proposed building, granted to said Derr by the City Engineer, who was duly authorized to grant the same. They alleged that the building was to be of wood, one and a-half stories high, the walls and roof to be covered with corrugated iron as a safeguard against fire, as required by a city ordinance, and was to contain a coal-house, feed-room, stable and carriage-house, with the corner of the stable at least eighteen feet from the nearest part of the plaintiff's dwelling; that application had been made to the proper officer for a permit to connect the stable with a twenty-four inch city sewer in the bed of Lincoln alley, and that every reasonable precaution had been taken to prevent the building from annoying any one. They further alleged that after the permit to build was granted, the City Council without notice to the defendants, undertook by a resolution of the body to cancel the permit, which resolution was vetoed by the Mayor on the ground that it was beyond the power of the body, and that the resolution was subsequently passed over said veto, but they denied that the permit could be thus legally cancelled or revoked, and alleged that it remained a valid and effective permit. They denied that the proposed building was likely to become a nuisance by reason of foul odors, or producing danger from fire, or any other cause, or that it will cause irreparable injury to the plaintiff or his property.

After motion to dissolve, testimony was taken for the plaintiff and it was agreed that the answer should have the same effect as if the defendants had testified on the stand to the facts alleged therein. Upon hearing, the injunction was dissolved and the bill dismissed, and the appeal is taken from that order.

It clearly appears from the charter of the city that the City Council was authorized by the Legislature to enact the ordinance making it unlawful to erect "any house, stable, outhouse, or other building" without first making application to the City Engineer for permission to erect such building, and without obtaining from him a permit therefor, in accordance with the provisions and specifications of the City Code relat-

ing thereto, and there can be no question as to the validity of
the ordinance as respects its form and the uniformity of its ap-
plication to all citizens or property holders in Cumberland,
but it satisfactorily appears from the evidence also that such
an application was made, and such a permit was granted.
The application for a permit was made upon a printed blank
authorized by the City Engineer, and it gave the dimensions
and material of the proposed building, and described it as one
"to be used as a carriage-house, *stable*, and coal-house." The
City Code, sec. 1, ch. 2, expressly names *stables* among the
buildings not to be erected without a permit, and therefore
allowed under a permit.    Section 4 of the same chapter forbid
the erection of any frame building within certain limits, unless
the walls and roof were covered with iron; and sec. 12 of ch. 2
forbid the erection of any stable upon any lot fronting on any
*street* in the city, within thirty feet of the line of the street,
while sec. 5 of ch. 12 provides penalties for any one permit-
ting any cow or horse stable on their premises to become
offensive to, or to annoy, any neighbor or other person, by
reason of want of attention to the cleanliness thereof, and au-
thorized the Board of Health, to enter and abate such nuis-
ances and cleanse the premises at the cost of the owner or
occupant, thus providing a clear and comprehensive scheme
for the location, construction, and supervision of stables in
the city.    The permit issued in this case, authorized Derr to
erect on Mrs. Flury's lot "a metal clad carriage-house and coal-
shed, *in accordance with the terms of his application*," but
omitted the word *stable*.   In view of the provisions of the City
Code to which we have referred, and the granting of the per-
mit *"in accordance with the terms of his application*," which ex-
pressly stated a part of the building was to be used as a stable,
the conclusion is irresistible that it was intended to license the
erection of the building there described, and for the uses there
mentioned, and that the word *stable* was inadvertently omitted.
The permit must therefore be regarded as proper authority for
the erection of the carriage-house, stable and coal-house, pro-
posed.

The subsequent attempt to cancel or revoke this permit was ineffectual.   The only authority given to the City Council to control the operation of an *existing unrepealed* ordinance is found in sec. 22 of ch. 3, title, City Engineer, where an appeal to the City Council is given to any one feeling aggrieved at the *refusal* of a permit by the City Engineer, but no appeal to any tribunal, is given to the city when a permit is *granted.* In *Harper* v. *Jonesboro,* (*Ga.*), 22 S. E. Rep. 140, it was said, "the passage of an ordinance is a legislative Act, accompanied by a certain degree of formality, and unless in the ordinance itself, there be some provision by which the city authorities reserve the right to abrogate its terms by a less formal pro cedure, no change can be made in such an ordinance, except by the passage of another, qualifying or repealing, or modifying its terms."   If the terms of an ordinance can only be changed by a legislative Act, so as to operate uniformly upon all persons within its scope, still less can its protection be denied to one person singled out by a mere resolution of the Council which leaves the ordinance in force and unchanged. The Court below well said that the resolution "proposed to deny him the privileges and rights conferred by the ordinance and the permit, by a mere resolution not modifying the law of the city, but simply segregating him apart from all other citizens of Cumberland and depriving him arbitrarily of th rights assured under the law of the city to every other property holder, and this too without notice or opportunity to be heard."   This cannot be done. . This Court has said in *Bostock* v. *Sams,* 95 Md. 415.   "Municipalities may pass ordinances prescribing general regulations applicable alike to all citizens and by which each may regulate his conduct and know his rights and his duty as a member of the corporation; but it is not consistent with any express or implied power to be found in the municipal charter, that any individual or any agency of the corporation should be invested with the unrestrained and unregulated power and authority to say, in each particular case as it arises, what the good government and welfare of the community may demand when dealing with,

and undertaking the control of, the rights of the citizen in respect to the enjoyment and use of his property, as has been done by the provision in the ordinances of the city here brought under consideration." The refusal of a permit for the erection of a building in that case under an ordinance providing that no such permit should be granted unless in the judgment of the Appeal Tax Court, the size, general character and appearence of the building to be erected will conform to the genaral character of existing buildings in that locality, and will not tend to depreciate their value, is not a more arbitrary assumption of power, than is the attempted revocation by a mere resolution of a previous building permit granted in conformity with the provision of an existing general ordinance, and the latter is subject to the same condemnation as the former.

But even if it were conceded that the attempted revocation were effectual, the question would still remain whether a Court of equity would be justified in restraining the erection of the building under the evidence in this record.

A careful examination of this record satisfies us that this case comes clearly within the decisions in *Met. Savings Bank* v. *Manion*, 87 Md. 68, and *King* v. *Hamill*, 97 Md. 103. In the last case it was said: "It is not necessary to cite authorities outside of this State to show that a stable is not *per se* a nuisance. In 87 Md. *supra*, this Court so declared in reference to a livery stable, saying, "the authorities which hold that a livery stable in a city is not *per se* a nuisance, are so numerous that it would serve no useful purpose to repeat them."   *   *   *   And whilst this is unquestionably true, it is equally clear that a stable, whether used for livery purposes or for private convenience may sometimes become a very great nuisance and source of discomfort against which the Courts would not fail to grant relief."

In *St. John's* v. *McFarlan*, 33 Mich. 72, the Court said, "The fact that the erection of a building is prohibited by ordinance cannot make it a nuisance. If this were so, then the doing of any act prohibited by law, would, upon the same reasoning

be a nuisance." In *Waupun* v. *Moore*, 34 Wis. 450, it is said, "We find the principle stated upon several very respectable authorities that equity will not lend its aid ·to enforce by injunction the by-laws or ordinances of a municipal corporation restraining an act, unless the act is shown to be a nuisance *per se*." And in *Mayor* v. *Smith*, 64 N. H. 380, it is said, "The act sought to be restrained must be one, which if executed, will *inevitably* bring on the danger threatened. It must be a nuisance in fact, and not one created solely by statute or ordinance." And in *King* v. *Hamill*, *supra*, it is said: "An injunction will not ordinarily be granted against an anticipated nuisance unless the facts alleged and proven are sufficient to show it will be a nuisance *per se*."

"It must be plainly seen that acts are threatened which when completed will *certainly* constitute or result in a grievuous nuisance"   *   *   *   or "the circumstances of the case must enable the Court to form an opinion as to the illegality of the acts complained of and the irreparable injury which will ensue. *Adams* v. *Michael*, 38 Md. 129.

Examining the testimony then in the light of these authorities the record fails to show with any approach to certainty or even with reasonable probability that the stable when completed will result in any nuisance or in any special or irreparable injury to plaintiffs property or comfort. The chief ground of complaint made, is the proximity of the stable to the plaintiffs house though the distance from the stable part of the building to the nearest corner of the house is shown to be eighteen feet. But the proximity of dwellings to disagreeable or objectionable structures is an inevitable incident of life in cities and towns. As was said in *Hyatt* v. *Myers*, 73 N. C. 232. "If a man, instead of contenting himself with the quiet and comfort of a country residence, chooses, to live in town, he must take the inconvenience of noise, dust, flies, rats, smoke, soot, cinders, &c., caused in the use and enjoyment of his neighbors property, provided the use of it is for a reasonable purpose, and the manner of using it is such as not to cause any unnecessary damage or annoyance to his neighbors."

Among the causes of complaint in this case, are increased fire risk, increased insurance rates, and depreciation of the plaintiffs dwelling.   But neither increased danger of fire, nor increase of insurance rates, nor depreciation of property by the erection of a neighboring lawful building, will entitle him to relief by injunction.  *Dorsey* v. *Allen*, 85 N. C. 358;  *Chambers* v. *Cramer* (W. Va.), (54 L. R. A. 545), 38 S. E. Rep. 691; *Ballentine* v. *Webb*, 84 Mich. 38, 7 N. W. Rep. 485.

The other anticipated inconveniences and discomforts in this case are bad odors and the gathering of vermin, but these are the mere conjectures or apprehensions of the witnesses.   These may be realized it is true, if the stable should be neglected and filth be allowed to accumulate and fester, but this is not to be presumed, and even if realized, the ordinances provided a remedy by fine and abatement when the nuisance arises.   But provision has been made for carrying off all liquid matter by connection to be made with an adequate public sewer, and if proper care and attention is given to the prompt removal of manure and refuse matter, the other fears will prove imaginary.

For the reasons given the decree will be affirmed.

> *Decree affirmed with costs to the appellee.*

(Decided March 22nd, 1904.)