STATE EX REL. NOWOTNY, Respondent, vs. CITY OF MILWAUKEE and another, Appellants.

*May 12—June 3, 1909.*

*Health: Health officers: Necessary powers: Municipal corporations: Police power: Delegation to health officer: Licensing sales of milk: Revocation of license.*

1. Health officers who are expected to accomplish results must necessarily possess large powers and be endowed with the right to take summary action, which at times trenches closely upon despotic rule.

2. Executive boards and officers who can deal at once with emergencies under general principles laid down by the lawmaking body must exist if the public health is to be preserved.
3. Under charter authority to tax, regulate, and restrain vendors of milk and to regulate and restrain the sale of milk, a common council has power to pass an ordinance vesting the power of issuing and revoking licenses in the city health officers, with the right to exercise the power of revocation summarily and even without notice. Language in *State ex rel. Sepic v. Milwaukee*, 129 Wis. 562, that the words "regulate" and "restrain" do not in any sense mean "revoke," considered and overruled.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

For the appellants there was a brief by *John T. Kelly,* city attorney, and *Clinton G. Price,* assistant city attorney, and oral argument by *Mr. Price.*

*Carl Runge,* for the respondent.

WINSLOW, C. J. The health commissioner of *Milwaukee* granted the relator a license to peddle milk in said city for one year, the license being by its terms "subject to revocation" according to the provisions of the city ordinances. The license having been in form revoked by the health commissioner because relator had been convicted of selling impure milk, the relator brought an action of *certiorari* in the circuit court and the action of the commissioner was reversed, whereupon the city and the health commissioner appealed to this court.

The question is whether the revocation was lawful. In addition to broad general police powers, the common council of the city of *Milwaukee* had power under the city charter "to regulate and restrain the sale of . . . milk," also to "tax, license, regulate, and restrain . . . vendors of milk; to fix and regulate the amount of license under this subdivision," etc. Subds. 9 and 40, sec. 3, ch. 4, Charter of Milwaukee, being ch. 184, Laws of 1874, as amended. By ch. 13 of the charter the duties of the commissioner of health are defined and made very broad and sweeping. He is given power to

summarily abate nuisances of all kinds, destroy diseased or infected food, clothing, and other like articles, establish temporary hospitals in case of epidemics, and, in fine, to exercise very broad and autocratic powers in all matters relating to the conservation of the public health, and sec. 16 of the chapter further provides that the council may "further define" his duties and pass such ordinances in aid of his duties as may tend to promote and secure the general health of the inhabitants of the city.

A health officer who is expected to accomplish any results must necessarily possess large powers and be endowed with the right to take summary action, which at times must trench closely upon despotic rule. The public health cannot wait upon the slow processes of a legislative body or the leisurely deliberation of a court. Executive boards or officers who can deal at once with the emergency under general principles laid down by the lawmaking body must exist if the public health is to be preserved in great cities. *Lowe v. Conroy,* 120 Wis. 151, 97 N. W. 942. It is well said in *People ex rel. Lieberman v. Vandecarr,* 175 N. Y. 440, 67 N. E. 913:

"The vesting of powers more or less arbitrary in various officials and boards is necessary if the work of prevention and regulation is to ward off fevers, pestilence, and the many other ills that constantly menace great centers of population."

There is nothing of greater importance relating to the food supply of a great city than that the milk sold should be pure and wholesome, and the common council of *Milwaukee,* realizing this fact, and realizing also that it was imperative that action should be quick and decisive if it is to be efficient, passed ordinances requiring under penalties that all milk sold must be unadulterated, must meet certain standards, and be obtained from healthy cows fed upon wholesome feed, and further requiring that every milk vendor must obtain a license from the health commissioner, "which license may at any time be revoked by the commissioner of health for viola-

tion of the provisions hereof, or for any good or sufficient cause." We are convinced that the council had power to pass the ordinance and vest the power of issuing and revoking licenses in the health commissioner by virtue of the power to "tax, regulate, and restrain" the "vendors of milk," and to "regulate and restrain the sale of milk," given to it by the city charter.

The requiring of licenses and the reserving of the power to revoke such licenses, in case of misconduct or violation of law, is well recognized as one of the most effective means of regulating and restraining a business that has yet been discovered, but the power of revocation would amount to little if it could not be vested in an executive officer or board with power to act quickly. The sale of infected milk for a single hour might produce an epidemic of typhoid fever which would sweep hundreds to the grave. The importance of reserving in some executive official the power to revoke can hardly be overestimated. Prosecutions to recover fines and penalties may drag their weary lengths along for weeks and months and even then prove ineffective; but the revocation of the license remedies the evil and avoids the danger of the spreading of disease at once. It is regulation in the most effective sense. We have no hesitation in holding that when the city was given the power to license, restrain, and regulate the sale of milk it also took power to revoke licenses, and that it might vest such power in the health commissioner with the right to exercise the same summarily and even without notice. McQuillan, Mun. Ord. § 420, and cases cited; *Child v. Bemus,* 17 R. I. 230, 21 Atl. 539, 12 L. R. A. 57.

It is only fair to say that this court seems in a measure to blame for the erroneous ruling made by the trial court. In the case of *State ex rel. Sepic v. Milwaukee,* 129 Wis. 562, 109 N. W. 421, it was said that the words " 'regulate' and 'restrain' do not in any sense mean revoke." That case involved the power of the council to delegate to a court the

power to revoke a liquor license. The general statutes of the state having provided for the revocation of all liquor licenses in any city by the council alone, it was necessarily held that an ordinance which attempted to vest the power in a court was void because contrary to the general state law. It was entirely unnecessary to support the decision in that case by holding that the power to regulate and restrain does not include the power to revoke a license. We now deem the remark to have been ill advised and distinctly erroneous, and overrule it. The case of *Mernaugh v. Orlando,* 41 Fla. 433, 27 South. 34, which was cited in the *Sepic Case* as authority for the proposition, simply holds that the power to "regulate and restrain" saloons and beer halls does not include the power to prohibit the sale of liquors entirely in the municipality. This may be at once admitted without at all militating against the proposition that the power to "license, regulate, and restrain" does include the power to revoke an individual license for misconduct of the holder. Such an act does not prohibit the business, but regulates it in the truest sense by keeping it in the hands of law-abiding licensees.

*By the Court.*—Judgment reversed, and action remanded with directions to quash the writ of *certiorari*.