JOHN BURLEY *v.* MAYOR, COUNSELLOR AND
ALDERMEN OF THE CITY OF ANNAPOLIS

[No. 29, October Term, 1943.]

308

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, ADAMS, and BAILEY, JJ.

*Albert J. Goodman* for the appellant.

*Henry J. Tarantino* for the appellees.

MARBURY, J., delivered the opinion of the Court.

Appellant, a resident of Annapolis, obtained from the municipal authorities on May 1, 1942, a license to operate two billiard tables for which he paid the required fee of $10.50. On December 14, 1942, after seven months and a half of the year for which the license was issued had elapsed, the city authorities passed a resolution revoking his license. The city police then entered his premises and removed the license issued to him by the city, whereupon he filed a petition for the writ of mandamus to compel its return. The court below declined to grant the writ. From the order dismissing the petition this appeal is taken.

The municipal authorities of Annapolis have power under the charter of the city to license billiard tables, and they also have power to prevent and remove nuisances. Code of Public Local Laws of Maryland, 1930 Ed., Article II, Section 24. In fulfillment of their charter powers they provided for billiard table licenses, and in the ordinance included certain restrictions on the use of

such licenses. The premises were not to be kept open between midnight and 7 A. M. No minor under the age of nineteen years could be admitted to the premises. Any windows or glass doors facing on any street or alley must be transparent so that the interior could be plainly seen. A fine is provided for violation of any of these regulations, and it is further stated that "upon a second conviction under this section the license granted to said person or persons so offending shall be revoked." Code of the City of Annapolis, Article VI, Section 23.

The appellant was not convicted either a first or a second time for the violation of any of the named regulations. He had, however, been fined by a trial magistrate on October 3, 1942, on a plea of guilty of operating a gambling house on the premises. The police commissioner brought this fact to the attention of the municipal authorities, and, according to the agreed statement of facts in the record, the commissioner further stated that the premises had been raided on three previous occasions of which the dates are not given. The appellant was not, at these times, the operator or lessee. In response to the request of the police commissioner, the municipal authorities summarily revoked the appellant's license.

Whether the license ordinance is a revenue act or a regulatory measure is not important here. We are not construing the ordinance or its conditions. We are concerned with the question whether the city authorities could revoke the license for causes not mentioned in the ordinance. The city could have required, as a condition precedent to granting a license, that the applicant show evidence, in some form, of his good character, or that the proposed place of amusement was not objectionable to those within a reasonable distance of its location. No conditions precedent were, however, prescribed. Anyone could obtain the license, whether or not he had been previously convicted of any offense. It was not necessary to advertise the application, nor was any hearing required to be held upon it. All the conditions men-

tioned by the city in its ordinance were conditions subsequent to the issuance of the license. Gambling on the premises was not one of those included.

Some jurisdictions have held that where a licensee takes a license subject to the condition that it may be revoked at the pleasure of an authority, then it can be so revoked without any hearing. *Commonwealth v. Kinsley,* 133 Mass. 578; *Burgess v. Mayor & Aldermen of Brockton,* 235 Mass. 95, 126 N. E. 456; *People ex rel. Lodes v. Dept. of Health,* 189 N. Y. 187, 82 N. E. 187; *State ex rel. Nowotny v. Milwaukee,* 140 Wis. 38, 121 N. W. 658. It has been held elsewhere that even if the ordinance stated that the license could be revoked at any time, the licensee was entitled to notice and hearing. *Angelopulos v. Bottorff,* 76 Cal. App. 621, 245 P. 447; *Carroll v. California Horse Racing Board,* 16 Cal. 2d 164, 105 P. 2d 110. We have no such case here. We have the authority granting the license pointing out specifically in its ordinance certain causes for which a license can be revoked, and then we have a summary revocation for other causes.

There is a wide distinction between a statute or an ordinance under which a licensee knows that he holds his license at the pleasure of the governing authority, and a statute or an ordinance which contains no such provision. In the one case, revocation is not arbitrary because it is a part of the condition upon which the license was obtained. In the other case, it may be extremely arbitrary, and if permitted, leaves a licensee with no security or redress. In the case before us the licensee had a right to believe from the inclusion of certain conditions of revocation in the ordinance that his license could not be taken away for other reasons. If the municipal authorities could take his license away at any time for any reason, it was not necessary for them to specify any causes for revocation in the ordinance. The fact that they did so shows that they contemplated the exercise of no general power of revocation, and did not intend that such action should be taken except for the

causes enumerated. The licensee is bound by the expressed conditions, and the municipal authorities are bound by those implied.

In those cases where attempts have been made to revoke under an authority not reserved in the granting statute or ordinance, there seems to be a unanimity of holding that it cannot be done. The general law on the subject is thus stated in 33 *Am. Jur.*, page 382, "* * * Where a statute or ordinance authorized the revocation of a license for causes enumerated, such license cannot be revoked on any ground other than the causes specified." See also 37 *C. J., Licenses* 247, paragraph 110; *Stone v. Fritts,* 169 Ind. 361, 82 N. E. 792; *Wheeling, Etc., R. Co. v. Triadelphia,* 58 W. Va. 487, 52 S. E. 499; *Peterson v. Guernsey,* 26 Wyo. 272, 183 P. 645; *Spiegler v. Chicago,* 216 Ill. 114, 74 N. E. 718; *Vanaman v. Adams,* 74 N. J. L. 125, 65 A. 204; *Lyman v. Malcolm Brewing Co.,* 160 N. Y. 96, 54 N. E. 577; *State v. Louisiana State Boxing Commission,* 163 La. 418, 112 So. 31; *State v. Charlesworth,* 141 Or. 290, 16 P. 2d 1116, 17 P. 2d 1104; *Walker v. San Gabriel* (Cal. App.), 122 P. 2d 634; *Royal Highlanders v. Wiseman,* 140 Neb. 28, 299 N. W. 459; *Commonwealth v. Briggs,* Quar. Sess., 34 Pa. Dist. & Co. R., Pa. 97.

The argument on behalf of the city is that it is acting under its nuisance powers, that a gambling house is a nuisance, and that in taking away the billiard table license of the appellant, it is preventing a nuisance. A sufficient answer to this theory is that the facts do not support it. The authority given the city by its charter, Code of Public Local Laws, 1930, Article II, Section 24, reads as follows: "The Mayor, Counselor, and Aldermen shall have power to enact all laws and ordinances necessary * * * to prevent and remove nuisances." It is not anywhere shown in the record that the municipal authorities have passed any ordinance, affecting all citizens alike, and providing a method for the prevention and removal of nuisances. In the absence of such showing it may be presumed that there is no such ordinance.

And nuisances which are to be removed are only those so declared or which are such by common law. *Jewel Tea Company v. Bel Air,* 172 Md. 536, 192 A. 417.

Public nuisances, that is to say, those nuisances which have a common effect and produce a common damage, are usually placed in three classifications: First, those which are nuisances *per se* or by statute; second, those which prejudice public health or comfort such as slaughterhouses, livery stables, etc.; third, those which in their nature are not nuisances, but may become so by reason of their locality, surroundings, or the manner in which they may be maintained. *Dillon on Municipal Corporations,* 5th Ed., paragraph 690, Vol. II, pages 1044-1045. The same eminent authority on page 1046 says: "As to this third class * * * while they may be abated under the power conferred by statute, the proper construction of the power in respect to such things is, that the city has authority to declare by general ordinance what shall constitute a nuisance," and further, "as to the third class, it is for the courts to determine whether a nuisance exists in fact and the city has no power of summary abatement, or removal." See also *Wood on the Law of Nuisances,* 3d Ed., page 977; *Mayor, Etc., of Baltimore v. Radecke,* 49 Md. 217, at page 229, 33 Am. Rep. 239; *State v. Mott,* 61 Md. 297, 48 Am. Rep. 105. A further discussion of the subject is found in *McQuillin on Municipal Corporations,* 2nd Ed., Revised, paragraph 959, Vol. III, page 151, and at the end of this paragraph the following statement is found: "Laws providing for the abatement of nuisances are generally so drawn that the usual remedies may be invoked by the appropriate public authority, that is by summary proceedings, or by injunction, or by particular legal steps outlined by charter or statute at the expense of the property causing the nuisance."

The statute under which the appellant was convicted is contained in Code P. G. L., 1939, Article 27, Sections 288 and 289. The record does not show the exact charge to which the appellant plead guilty. His petition for

mandamus says that the charge was that he was operating a gambling house. That is the same crime described in the agreed statement of facts. A billiard table is expressly excepted by Section 289 from the kinds of tables which are designated as gaming tables. Such a table may lose its immunity by being used for purposes of gaming. *State v. Price,* 12 Gill. & J. 260, 37 Am. Dec. 81. Inasmuch as the record does not show that the billiard tables themselves were used, we can proceed only upon the theory that somewhere on the premises for which the billiard table licenses were granted, the appellant, in the words of the statute, "kept a house for the purpose of gambling." One conviction does not make the premises a gambling house and a nuisance *per se.* "A nuisance necessarily involves the idea of continuance." *Wynkoop v. Hagerstown,* 159 Md. 194, at page 202, 150 A. 447, 450, and cases there cited. Appellant's place of amusement is, therefore, not a nuisance *per se,* and can only become one by the manner in which it is maintained.

To act under its nuisance powers in such cases the city of Annapolis must first prescribe by general ordinance what are nuisances, and make provision for their removal. Here we have, however, no ordinance, no general declaration of what is a nuisance, or what becomes a nuisance and when. We do not even have the city authorities determining that this particular place is a nuisance. We have them taking away the appellant's license to conduct a lawful business, and leaving him in the possession of the premises where the unlawful gambling was once conducted. No attempt is made to close the premises for use by the appellant for other purposes. It is apparent that the city was not acting under any powers of preventing nuisances which it had under its charter.

In an important case, arising in the City of Milwaukee, the owner of a lot fronting on two rivers in that city attempted to build a wharf. The city by a special ordinance declared this wharf to be an obstruction to navigation and a nuisance. The Supreme Court of the

United States, which finally passed upon the case, denied the right of the city to do this, and in so doing used these words: "It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities. Yet this seems to have been the view taken by counsel who defended this case in the Circuit Court; for that single ordinance of the city, declaring the wharf of Yates a nuisance, and ordering its abatement, is the only evidence in the record that it is a nuisance or an obstruction to navigation, or in any manner injurious to the public." *Yates v. Milwaukee*, 10 Wall. 497, 77 U. S. 497, 505, 19 L. Ed. 984. These words of Mr. Justice Miller have been quoted with approval by this court in at least two cases. *New Windsor v. Stocksdale*, 95 Md. 196, at page 215, 52 A. 596, and *Frostburg v. Wineland*, 98 Md. 239, at page 244, 56 A. 811.

The same general principle has also been stated here in a case which has to do with the permit for the building of a stable under an ordinance of the city of Cumberland. The permit was first granted and subsequently cancelled by resolution. The applicant continued to build notwithstanding the cancellation, and one of the neighboring residents filed a bill to enjoin him. This court said that the attempt to revoke the permit by resolution was ineffectual, and gave as its reasons the following: "If the terms of an ordinance can only be changed by a legislative act, so as to operate uniformly upon all persons within its scope, still less can its protection be denied to one person singled out by a mere resolution of the council, which leaves the ordinance in force and unchanged. The court below well said that the resolution 'proposed to deny him the privileges and rights conferred by the ordinance and the permit by a mere resolution

not modifying the law of the city, but simply segregating him apart from all other citizens of Cumberland, and depriving him arbitrarily of the rights assured under the law of the city to every other property holder; and this, too, without notice or opportunity to be heard.' This cannot be done." *Gallagher v. Flury,* 99 Md. 181, 186, 57 A. 672, 674.

Our conclusion must be that the action of the appellee in revoking the appellant's billiard license was arbitrary and unwarranted. It cannot be upheld under the terms of the license ordinance, nor can it be held that, by such action, the city was abating or preventing a public nuisance. In so holding we are not weakening the police power of the city. That power is the force behind the maxim *sic utere tuo ut alienum non laedas.* It is one of the most comprehensive powers, if not the most comprehensive power, outside of the war power which any government may have. It extends to the protection of the health, morals, safety, and general welfare of the public, and all means which may be necessary in the opinion of the authorities to give such protection. Yet it is not without its limitations, and one of these is that it cannot be exercised arbitrarily. In this case arbitrary action was taken under the guise of the police power in a manner not authorized by such power. It cannot be upheld.

It follows that the appellant was entitled to have his license returned to him and the writ of mandamus should have been issued. When the case was brought, over four months of the time for which the license was issued still remained. It has, however, now expired, and therefore no purpose would be served by an order directing its return. On the authority of *Tolman Laundry v. Walker,* 171 Md. 7, 187 A. 836, the case will not be remanded.

*Order reversed without a remand. Costs to be paid by the appellee.*

DELAPLAINE and COLLINS, JJ., dissent.