# CONSOLIDATED APARTMENT HOUSE COMPANY

## vs.

## MAYOR AND CITY COUNCIL OF BALTIMORE, WILLIAM A. LARKINS, Commissioner of Street Cleaning, and JAMES H. PRESTON and Others, Constituting the Board of Estimates.

*Municipal corporations: neglect of officers. Baltimore City: police powers; removal of ashes; apartment houses.*

Municipal corporations are liable for neglect of their officers in respect to the enforcement of municipal ordinances passed in the exercise of police powers conferred upon them, except where the power to enforce such ordinances is given to an independent board or officer.                          p. 528

Since, under Chapter 367 of the Acts of 1867, the Police Department of Baltimore City is independent of the municipality, the latter can not be held liable for damages resulting from the violation of city ordinances by third parties, as distinguished from its liability for damages occasioned by neglect of the city's employees or its own failure to perform the duty imposed upon it.                          p. 528

The principle that where a statute confers a power upon a municipal corporation to be exercised for the public good, its exercise is not merely discretionary, but is imperative, relates only to powers and duties imposed on the municipality in its corporate capacity and not to those imposed on it as a public agency of the state.                          p. 532

In an action of damages against the Mayor and City Council of Baltimore and the Street Commissioners for failure to remove ashes from an apartment house, it was *held* that as against the Street Commissioners the action was ineffective in that it failed to aver that the Street Commissioners had funds available wherewith to remove ashes.                          p. 538

The power and duty of the City of Baltimore to remove ashes rests upon the city's private or corporate capacity and not upon its governmental capacity. p. 538

*Decided December 12th, 1917.*

Appeal from the Superior Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS and URNER, JJ.

*Albert C. Ritchie* (with a brief by *Ritchie & Janney, Robt. Williams and Enoch Harlan*), for the appellant.

*Robert F. Leach, Jr., Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

In this case, which is a sequel to the case of *Baltimore City* v. *Hampton Court Co.,* 126 Md. 341, the suit was brought by the Consolidated Apartment House Company against the Mayor and City Council of Baltimore, William A. Larkins, Commissioner of Street Cleaning, and James H. Preston, John Hubert, S. S. Field, H. Kent McCay and James F. Thrift, constituting the Board of Estimates of Baltimore City, to recover damages for the failure of the City and Commissioner of Street Cleaning to remove the ashes and household refuse from the plaintiff's premises, between June 5th, 1913, and July 22nd, 1915, which damages consisted of the expenses incurred by the plaintiff in the removal of such ashes and household refuse from its property. The defendants demurred to the declaration, and this appeal is from the judgment of the Court below in their favor for costs.

The *narr.* sets out the following provisions of the Charter of Baltimore City (Chap. 123 of the Acts of 1898):

"The Mayor and City Council of Baltimore shall have full power and authority * * * to clean the streets and remove the dirt and filth therefrom, and to prohibit and punish by ordinance, the placing of any dirt, filth or other matter thereon and to protect any pavement by prohibiting traveling thereon.

"The Commissioner of Street Cleaning shall be the head of the fourth sub-department of Public Safety. He shall be appointed by the Mayor in the mode prescribed by Section 25 of this Article, and hold his office as therein provided. He shall be charged with the duty of cleaning the streets, as well as the cleaning of the sewers, subject as to the latter to the direction and orders of the City Engineer, and shall perform such other duties as may be prescribed by ordinance not inconsistent with this article.

"The Mayor and City Council of Baltimore shall have full power and authority * * * to levy annually upon the assessable property of the city, by direct tax, with full power to provide by ordinance for the collection of the same, such sum of money as may be necessary, in its judgment, for the purpose of defraying the expenses of the said city over and exclusive of all expenses, charges and sums of money which it is, or shall be required by law to collect for other purposes subject to the provisions and limitations herein contained."

The *narr.* also avers that at the time therein mentioned, the following ordinances of the Mayor and City Council of Baltimore were in force:

"The said Commissioners of Street Cleaning shall have exclusive charge of the cleaning of the public streets, lanes, alleys, and of the collection and removal of ashes, garbage, street and household refuse in the City of Baltimore. He shall have and exercise all the powers, and perform all the duties, heretofore performed by the Health Department in relation to the collection, sale and removal of ashes, garbage, street

offal and refuse of the cleaning of public streets, lanes and alleys, the cleaning away of ice and snow from the gutters and crossings of the same and from the front of public squares, public buildings, bridges and public wharves belonging to the city, and the footway of the city spring and public squares.

"It shall be the duty of the Commissioner of Street Cleaning to employ a sufficient number of drivers, horses and water-tight carts, for each district, for the removal of offal and coal and other ashes from the *dwellings and other places* within the several districts; and it shall be the duty of the men not only to act as drivers, but also to collect all offal and coal and other ashes as herein provided; and said superintendent shall cause said horses, carts and drivers to pass through all the streets, lanes and alleys within their respective districts, in such manner as shall insure the passage of one horse, cart and driver' through each and every street, lane and alley not less than three times a week, on alternate days, from the first day of November until the first day of May, and daily (Sundays excepted) from the first day of May until the first day of November; and they shall give notice to housekeepers of their approach by sounding a trumpet, blowing at the intersection of each street, that may be heard at least one square; and said superintendents shall in no case, own or be interested in the ownership of said horses or carts."

It is then alleged that the Mayor and City Council of Baltimore appropriated the sum of $822,658.22 for the needs of the Commissioner of Street Cleaning during the year 1913, and that of that amount $66,500.00 was for removing garbage, $227,483.22 was for the purpose of collecting garbage and ashes, and $25,000 was for the disposal of non-perishable waste, and that at the end of the year there remained an unexpended balance of the appropriation which was returned to the general treasury of the city, and that for the years 1914 and 1915 there were like appropriations,

of which there remained at the end of each year an unexpended balance which was returned to the general treasury of the city; that on or about June 5th, 1913, the defendants constituting the Board of Estimates unlawfully and without authority transmitted to the Commissioner of Street Cleaning an order directing him to cease removing ashes and household refuse from dwelling houses, of more than four stories or having an elevator, and that thereafter the Commissioner of Street Cleaning discontinued removing ashes and household refuse from certain apartment houses including The Plaza, an apartment house owned and managed by the plaintiff, until required to do so by the mandate of the Court of Appeals filed June 22nd, 1915, although frequently requested to remove such ashes, etc.; that the Mayor and City Council of Baltimore, through its officers and agents, the members of the Board of Estimates, ordered the discontinuance of the removal of the ashes and household refuse from plaintiff's property, and that at no time did the Mayor and City Council, or any person or officer in its behalf, remove or offer to remove such ashes, etc., from the plaintiff's property between the dates mentioned, and that by reason thereof the plaintiff was compelled to hire teams to remove such ashes, etc., to its great loss and damage.

In this Court the only objections to the declaration urged by the appellees in support of their demurrer and the judgment of the Court below are: (1) That a municipal corporation, unless there is a contract creating, or a statute declaring the liability, is not bound to secure execution of its ordinances relating to its public powers, and is not responsible civilly for neglect of duty on the part of its officers in respect to their enforcement; and (2), that the removal of ashes and household refuse "in nowise involves the exercise of the city's corporate function," but that "such acts, from their very nature, are purely governmental."

In reference to the first of these contentions and leaving out of consideration for the moment the distinction between the corporate and governmental powers of a municipal cor-

poration, it is clear that in this State municipal corporations are liable for the neglect of their officers in respect to the enforcement of municipal ordinances passed in the exercise of powers conferred upon them, except where such corporations are deprived of the power to enforce their ordinances by statute. In *Baltimore* v. *Marriott,* 9 Md. 160, the Court, referring to the obligation imposed upon Baltimore City by the provision of its Charter authorizing the city to pass all ordinances necessary "to prevent and remove nuisances," said: "In order that the city should relieve itself from this obligation, it was not only necessary that it should pass ordinances sufficient to meet the exigencies of the case, but it was also bound to see that those ordinances were enforced. To pass an ordinance and not enforce it, would be the same as if none had been passed so far as the public interests were concerned." The cases of *Taylor* v. *Cumberland,* 64 Md. 68; *Cockrane* v. *Frostburg,* 81 Md. 54; *Hagerstown* v. *Klotz,* 93 Md. 437, and *Annapolis* v. *Stallings,* 125 Md. 343, are to the same effect.

Since the passage of the Act of 1867, Chapter 367, creating an independent police department for Baltimore City, and imposing upon it the duty of enforcing within the city limits all laws and ordinances, this Court has held that the Mayor and City Council of Baltimore was not liable for damages resulting from the violation of the city ordinances by third parties, as distinguished from damages occasioned by the negligent conduct of the city's employees or its failure to perform a duty imposed upon it. *Altvater* v. *Baltimore,* 31 Md. 462; *Sinclair* v. *Baltimore,* 59 Md. 592; *Taxicab Co.* v. *M. & C. C. of Baltimore,* 118 Md. 359; *Baltimore City* v. *Walker,* 98 Md. 637; *McCarthy* v. *Clark,* 115 Md. 454, and *Gutowski* v. *M. & C. C. of Baltimore,* 127 Md. 502.

As municipal corporations are liable for any neglect to enforce ordinances passed in the exercise of their corporate powers, except where the power to enforce them is given to an independent board or officer, we are brought to the consideration of the question whether the power granted by its

Charter to the Mayor and City Council of Baltimore in reference to the removal of ashes and household refuse is a governmental power, one bestowed upon it as a public agency of the State, or a corporate power, one relating to its local interests or granted for its special advantage.

Learned counsel for the appellees insist that the city's relation to the removal of ashes, etc., is so "closely akin to matters touching health and fire conditions," it "can only be held to be governmental." They cite and rely upon the cases of *Wallace* v. *Baltimore,* 123 Md. 638; *Baltimore* v. *Hampton Court, supra,* and *Gutowski* v. *Baltimore, supra.* In *Wallace* v. *Baltimore,* the Court held that a municipality in furnishing water gratuitously to be used in extinguishing fires, acts in a governmental capacity; JUDGE CONSTABLE saying: "So practically unanimous have been the decisions denying the liability of the municipality for losses from fire through the alleged negligence in connection with the water works, it is impracticable to give all the authorities so holding." In *Gutowski* v. *Baltimore,* where the negligence complained of was the neglect of the city to enforce an ordinance which prohibited the use of iron hooks in loading a vessel with a cargo of dynamite, and where it was conceded that the place of the accident was not within the corporate limits of the city, but was alleged to be at a point on the river within the jurisdiction and control of the municipality, the Court, after deciding against the right of the plaintiff to recover on other grounds, held as a further reason why the city was not liable, that "the exercise by the city of its authority to provide for the safety of persons or property, where its corporate or private interests do not require such action, is a governmental function for the non-performance of which it can not be sued, unless such a right of action is given by statute." After referring to the many Maryland cases in which the municipality had been held liable for injuries caused by dangerous conditions which it negligently created or permitted to exist in its public thoroughfares, JUDGE URNER, speaking for the Court, said: "In such in-

stances the liability of municipal corporations is sustainable upon the basis of their proprietary interest in the thorough-fares which they are empowered to maintain and keep safe for travel," and, in conclusion, he said: "The decisions dealing with such questions recognize the difficulty of drawing a clear and definite line of distinction between municipal duties and powers which are to be regarded as governmental, and those which should be described as corporate in their character, but, with respect to such a situation as the one disclosed in the declaration filed in this suit, we can have no doubt that the asserted duty should properly be included in the former class, and its non-performance held to be an insufficient ground upon which to require the city to respond to a suit for damages." These cases recognize the difficulty of determining whether a particular municipal power is governmental or corporate in its character, and are obviously not controlling except where powers of similar nature or character are being considered. The *Hampton Court case* is referred to as containing the statement that the Mayor and City Council of Baltimore had the power to regulate by ordinances the removal of ashes in exercise of its police powers, and that it could "amend, alter or repeal the existing ordinances on the subject and, subject to the limitation that such ordinances must be reasonable in their provisions, could classify the buildings from which such removal should be made at the public expense." In this case, however, we are not concerned with the power of the city to amend and repeal the ordinance in question but with the *nature* of the power to pass the ordinance, and the consequences of a failure or neglect to enforce it. We do not understand that case as deciding that the power of the city to provide for the removal of ashes is a part of its police power within the meaning of those cases holding that the police regulations of the city are not made or enforced in the interests of the city in its corporate capacity, but in the interest of the public, and the city is not liable therefore for the acts of its officers in attempting to enforce such regulations. 4 *Dillon*

*Munic. Corp.* (5th Ed.), sec. 1656. That question was not presented by the record and its decision was not involved in the disposition of the case.

It may be noted that the first provision of the City Charter set out in the declaration is found in section 6 of Chapter 123 of the Acts of 1898 (City Charter) among the powers granted to the city in reference to *"Streets, Bridges and Highways,"* and that the duty of cleaning the streets and sewers is imposed by the Charter upon the Commissioner of Street Cleaning, who, by the ordinances of the city is given "exclusive charge of cleaning of the public streets, lanes, alleys, and of the collection and removal of ashes, garbage, street and household refuse, * * * the cleaning away of ice and snow from the gutters and crossings of the same." The duties of the city in respect to its streets and highways, and its liability for a neglect of those duties have been too frequently and clearly stated to require us to cite cases other than those we have already referred to and those mentioned in *Gutowski* v. *Baltimore.* That *duty* of the city in respect to its streets and highways is derived from the powers and authority given it. As said in *Marriott's case* (9 Md. 160), and repeated in many of the later decisions of this Court: "It is a well settled principle that when a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary but imperative, and the words 'power and authority' in such case may be construed *duty and obligation."* The liability of the municipality in respect to such duties is based not only upon the ground that the statute imposed upon it a duty, "but also upon the further fact that it has provided it with the means and clothed it with the power to enforce and discharge that duty." *Flynn* v. *Canton Co.,* 40 Md. 312. This liability, however, as already shown, only relates to the powers and duties performed and imposed upon the municipality in its corporate capacity, and not as a public agency of the State, but if the power to pass the ordinance in question is referrable to the power conferred upon the city in

respect to its streets and highways, then, under the decisions in this State, to which reference has already been made, it should be classed among its corporate powers, to which the liability referred to attaches, as distinguished from its governmental powers.

It is said in 4 *Dillon on Munic. Corp.* (5th Ed.), sec. 1665: "The doctrine may be considered as established *where a given duty is a corporate one,* that is, one which rests upon the municipality in respect to its special or local interests, and not as a public agency of the State, and is absolute and perfect, and not discretionary or judicial in its nature, and is one owing to the plaintiff or in the performance of which he is specially interested, that *the corporation is liable in a civil action* for the damages resulting to individuals by its neglect to perform such duty, or for the want of proper care or want of reasonable skill of its officers or servants acting under its direction or authority in the execution of such duty, and, with the qualifications stated is liable on the same principle and to the same extent as an individual or private corporation would be under like circumstances. For illustration, if a city neglects its ministerial duty to cause its sewers to be kept free from obstructions, to the injury of a person who has an interest in the performance of that duty, it is liable, as we shall see, to an action for the damages thereby occasioned. So, if a city owns a wharf or pier and receives wharfage or profit therefrom it is liable, like an individual or private corporation, for injury caused by a failure to keep it in proper condition and repair. So in respect to its failure to keep its streets in a safe condition for public use, where this is a duty resting upon it." In section 1662 of the same volume, the learned author says: "A diversity in opinion appears in the decisions as to the liability of a municipal corporation for the neglect or torts of officers and agents of the municipality engaged in the cleaning of streets and in the removal of ashes and garbage from private premises. In some jurisdictions these duties are regarded as governmental in their nature and any implied liability of

the city for the negligence or torts of its officers in the performance of their duties in these matters is denied. But in other jurisdictions the contrary view is adopted and the municipality has been held impliedly liable for the negligent acts of employees of its department of street cleaning. In other cases the principle that the city acts in a private or corporate capacity, and not in the performance of a governmental function in the removal of ashes and garbage from the city has been affirmed by the courts, and the city has by virtue thereof been held to be liable for creation of a nuisance in the maintenance of dumps in the vicinity of other property." In the case of *Barney Dumping-Boat Co.* v. *New York Co.,* 40 Federal, 50, Justice Wallace said: "The only legal question in the case which merits notice is whether the city is liable for the negligence of the employees of this department. If the duty delegated to him by law is such as primarily devolved upon the city as a municipal or corporate obligation he and his subordinates are the agents of the city and the respondents are liable for their acts of misfeasance or nonfeasance done in the course of their ordinary employment. It does not seem reasonable to treat the commissioner (Commissioner of Street Cleaning) as an officer of the general public rather than of the city. His duties, unlike those of the officers of the departments of health, charities, fire and police, although performed incidentally in the interest of the public health are more immediately performed in the interest of the corporation itself, which is charged with the obligation of maintaining its streets in fit and suitable condition for the use of those who resort to them. Many cases are reported in the decisions of the state courts in which the City of New York has been held responsible to persons who have sustained injuries in consequence of obstructions which have been negligently suffered to intercept the safe use of the streets. The obligation of the city to keep its streets in such condition that those who use them may do so safely has been repeatedly declared, and the failure to remove ice or snow or dangerous accumulations of

any kind by the proper authorities is a breach of that obligation. * * * The duty of cleaning the streets necessarily comprehends the duty of removing such accumulations." In *Quill* v. *New York,* 36 Appellate Division (N. Y.) 476, the action was brought to recover for injuries claimed to have been inflicted upon the plaintiff by an ash and garbage cart belonging to the street cleaning department of the defendant, which was being driven along Manhattan street, and JUDGE CULLEN, in the course of his opinion, said: "The question then is presented in which class does the duty imposed by law upon the City of New York to remove the dirt accumulated on the streets and ashes and garbage upon the abutting residences, fall. * * * The learned counsel for the respondent contends that this is a police regulation imposed in the interest of the public health; that it is governmental as distinguished from municipal or corporate. * * * Now, the duty or labor imposed on the city by the Consolidation Act as to the removal of garbage and ashes, seems to us plainly not its governmental fnction of abating nuisances but the private duty which would otherwise rest on residents and property owners within the municipality. * * * The difficulty private parties find, where there is a large and dense population, in properly disposing of their sewage, led to the establishment of public sewers. But in reality it was a private duty assumed by a municipality on account of the difficulty of the citizens, individually, properly discharging it. The same is equally true of the duty now assumed to remove ashes and garbage. As to the ashes they are in no sense a menace to health. They are used for filling in lots and low land all through the city. The burden of removing ashes if the owner does not wish them to remain longer on his property is primarily just as much his personal obligation as it was to bring to his premises in the first instance the coal from the burning of which the ashes proceeded. As to the garbage, we do not see that it can be distinguished in principle from the case of sewage. Both are occasioned by the acts of private persons and on account of the restrictions imposed by urban

life the city discharges the private duty of the members of the municipality which it has become difficult for its members to discharge themselves." The judgment in favor of the plaintiff was accordingly sustained. In *Hanrihan* v. *Baltimore City,* 114 Md. 517, this Court held the Mayor and City Council of Baltimore liable for negligence in the construction of a sewer, and in the case of *Missano* v. *New York,* 160 New York, 123, Judge Bartlett, speaking for the majority of the Court, said: "At the time this alleged cause of action accrued it was the duty of the City of New York to keep its streets in repair and to see that they were thoroughly cleaned and kept cleaned at all times; also to remove the sweepings, ashes and garbage as often as the public health and use of the streets required it to be done. The fact that the discharge of this duty might incidentally benefit the public health would not make the acts of the commissioner of street cleaning a public function. It is clear upon principle and authority that the City of New York, in the ordinary and usual care of its streets, both as to the repairs and cleanliness, is acting in the discharge of a special power granted to it by the Legislature in the exercise of which it is a legal individual, as distinguished from its governmental function, when it acts as a sovereign." In *Denver* v. *Porter,* 126 Federal, 288, the Circuit Court of Appeals, speaking through Judge Hook, said: "It is contended with much earnestness and ability by counsel that in the gathering of refuse and waste of the city, and the establishment, maintenance and operation of dumping grounds for its ultimate disposal, the officers of the health department were not engaged in the performance of a duty imposed upon the city for its private or corporate profit, pecuniary or otherwise, but that on the contrary, those officers were the agents and representatives of the public, acting for the public benefit, and that therefore no liability for their negligence rests upon the city; that although they received their appointment and compensation from the municipality, nevertheless the essential character of their power and duties determine their

identity of their principal, whether the city on the one hand or the State in its sovereign capacity upon the other; that the powers they were exercising and the duties they were performing pertained to the general police power of the State; and that use was made of the city merely as a convenient mode of exercising the function of government—of accomplishing the purpose of the State through local instrumentalities." After speaking of the nature of the duties referred to, he said further: "We are of the opinion that in the case before us the removal of waste and refuse from the alleys of the city in the city carts, and deposited upon the dumping grounds near Porter's premises, and the supervision of such work and of the dump itself were of local or municipal concern, and that the officers and employees of the health department of the city, in discharge of their duties in connection with such work and supervision were acting as the representatives of the city for whose negligent acts or omissions it would be liable."

In view of the duties imposed by the Charter and the ordinances of the Mayor and City Council of Baltimore upon the Commissioner of Street Cleaning, and the repeated decisions of this Court in regard to the duties and liability of the city in respect to its streets, alleys and highways, it can hardly be said that the Commissioner of Street Cleaning is an officer of the State, or that the services performed by him are rendered the city as a public agency of the State, and not in its private or corporate capacity. As said by JUDGE URNER, the city has a proprietary interest in its thoroughfares, and while the removal of ashes and household refuse may contribute to the public health, it also bears a close relation to the obligation of the city to keep its streets and alleys clean and free from obstructions and safe for travel. The fact that the city may by ordinance impose the cost of the removal of ashes, etc., upon property owners, does not alter the nature or character of its duty to provide for such removal. *Flynn v. Canton Co., supra.*

In 1 *Dillon on Munic. Corp.* (5th Ed.), sec. 441, JUDGE DILLON said: "Where the law absolutely requires a ministerial act to be done by a public officer and he neglects or refuses to do such act without sufficient legal excuse, he may be compelled to respond to an individual who has sustained special damage thereby to the extent of the injuries arising from his misconduct. Mistake of duty and honest intentions will not relieve him from liability if such liability otherwise exists." And in the case of *Hampton Court* v. *M. & C. C. of Baltimore, supra,* JUDGE STOCKBRIDGE, speaking of the duty imposed by the ordinance upon the Commissioner of Street Cleaning to remove ashes, etc. said: "The terms in which this duty is placed upon the Commissioner of Street Cleaning are such as to make its discharge mandatory in character, under the uniform principle of construction frequently declared by this Court." In the case of *Amy* v. *Supervisors,* 11 Wallace, 136, MR. JUSTICE SWAIN, speaking for the Supreme Court of the United States, said: "The rule is well settled, that where the law requires absolutely a ministerial act to be done by its public officer, and he neglects or refuses to do such act he may be compelled to respond in damages to the extent of the injury arising from his conduct. There is an unbroken current of authorities to this effect." But it is said by JUDGE DILLON in Volume 1, section 440, of his work on *Munic. Corp.* (5th Ed.): "This liability can only be enforced when three elements are present, viz: (1) that the services of the officer are not gratuitous or coerced, but voluntary and attended with compensation; (2) that the duty to be performed is entire, absolute and perfect, and (3) that the duty is a personal one and not only one which he is under obligation, but which he is also clothed with ability to perform, both in the means furnished to him, and the legal authority to act irrespective of superior officers." In the *Hampton Court case* the Court also said that the Board of Estimates had no power to "set at nought the performance of a duty imposed by ordinance upon any department or sub-department of the city government." The dec-

laration alleges that the Board of Estimates transmitted to the Commissioner of Street Cleaning "an order directing him to cease removing ashes and household and miscellaneous refuse from dwelling houses of more than four stories or having an elevator," and further alleges that at the end of each of the years mentioned therein there remained "an unexpended balance of the appropriation for the needs of the Commissioner of Street Cleaning," but it is not stated what that balance was and it nowhere appears from the averments of the *narr.* that it was sufficient to enable the Commissioner of Street Cleaning to remove the "ashes and household and miscellaneous refuse" from the plaintiff's property. The declaration does not therefore bring the case as to the Commissioner of Street Cleaning within the rule stated by JUDGE DILLON, which is in accord with the principle upon which municipal corporations are held liable for their failure to discharge duties imposed upon them. *Flynn* v. *Canton Co.,. supra.*

It is said in *Kinkead's Comm. on Torts,* Volume 1 section 41: "All who said, command, advise or countenance the commission of a tort by another, or approve it after it is done, if for their benefit, are joint tort-feasors," and Mr. Poe, in section 467 of Volume 1 of his work on *Pleading and Practice,* says: "The defendant should be he who actually caused or committed or participated in the commission of a tortious act or who directed, ordered or authorized it." The same rule is stated in 38 *Cyc.* 485-6. The averments of the declaration are sufficient to bring the members of the Board of Estimates within the rule.

It follows from what has been said that the demurrer should have been sustained as to the Commissioner of Street Cleaning but that it should be overruled as to the other defendants. The judgment of the Court must therefore be reversed.

*Judgment reversed, with costs and new trial awarded.*