## E. EYRING AND SONS COMPANY *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 227, September Term, 1968.]

*Decided May 2, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, McWILLIAMS, FINAN and SMITH, JJ.

*William A. Hegarty,* with whom was *J. Calvin Carney* on the
brief, for appellant.

*Gerald S. Klein, Assistant City Solicitor,* with whom were
*George L. Russell, Jr., City Solicitor* and *Ambrose T. Hart-
man, Deputy City Solicitor,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

On the cold and snowy morning of February 9, 1967, at 8:10
a.m., the roof of the St. Rose of Lima Roman Catholic Church,
located in the Brooklyn area of Baltimore City, collapsed into
an assemblage of persons gathered inside for a Lenten Mass.
Suits were instituted by some of the injured persons against
various defendants including those who caused the church to be
built as well as those who participated in its planning, con-
struction, and supervision. In two of the suits, the appellee,
Mayor and City Council of Baltimore (City), was named as an
original defendant, and the appellant, E. Eyring and Sons Com-
pany (Eyring), alleged in the pleadings to be the general con-
tractor, filed a cross claim against the City. In three other suits,
Eyring impleaded the City as a third party defendant. It was
asserted in the various claims that the collapse of the roof was,
at least in part, due to the City's Bureau of Building Inspec-

tion's failure to see that the building was safely and adequately designed and its failure to properly inspect and supervise its construction to insure compliance with the applicable provisions of the building code. The City responded to these claims by filing motions under Maryland Rule 323 b to dismiss on grounds of governmental immunity in each of the five cases. On June 5, 1968, the Superior Court of Baltimore City delivered a memorandum opinion granting the City's motions and ordered dismissal of the five cases against it. From these orders and the judgments rendered thereon, Eyring has appealed to this Court.

On appeal, Eyring raises the following two questions: (1) Is the maintenance and operation by the Mayor and City Council of a Bureau of Building Inspection, Department of Public Works, a type of activity wherein the City is immune from tort liability? (2) Has the Mayor and City Council of Baltimore met the burden of proving that its claim of governmental immunity is available to it as an affirmative defense? This Court answers both questions in the affirmative.

As in almost all common law jurisdictions, the law is well established in Maryland that there can be no recovery against a municipal corporation for injuries occasioned by its negligence or nonfeasance in the exercise of functions essentially governmental in character. *Irvine v. Montgomery County,* 239 Md. 113, 210 A. 2d 359; *Fowler v. Bd. of Co. Comm'rs,* 230 Md. 504, 187 A. 2d 856, *cert. denied,* 375 U. S. 845, and cases therein cited. On the other hand, where the function performed is a proprietary one, the municipal corporation may be liable for its torts arising out of such activities. *Haley v. City of Baltimore,* 211 Md. 269, 127 A. 2d 371; *Cox v. Anne Arundel County,* 181 Md. 428, 31 A. 2d 179; *Baltimore v. State,* 173 Md. 267, 195 A. 571. The distinction between governmental and proprietary functions is sometimes illusory in practice. As one author has phrased it: "The rules sought to be established [in determining whether a given function is governmental or proprietary] are as logical as those governing French irregular verbs." Seasongood, *Municipal Corporations: Objections To The Governmental Or Proprietary Test,* 22 Va. L. Rev. 910 (1936). However, this Court has recognized the difficulty in distinguishing between those functions which are governmental

and those which are not, and has established guidelines in *Baltimore v. State, supra*:

"But in truth there is no universally accepted or all inclusive test to determine whether a given act of a municipality is private or governmental in its nature, but the question is usually determined by the public policy recognized in the jurisdiction where it arises . . . . Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature." *Id*. at 275, 195 A. at 576.

It is the appellant's contention that the enforcement of the building code by the Bureau of Building Inspection is private or proprietary in nature and that the City cannot avail itself of the defense of governmental immunity. Applying the standards set out in *Baltimore v. State, supra,* this Court cannot accept Eyring's argument. Section 6 (1) of the Charter and Public Local Laws of Baltimore City (1949 ed.) authorized the City "To regulate the location, construction, use, operation, maintenance and removal of buildings and structures, or any part thereof, of every kind." Execution of this power was in turn made the responsibility of the Bureau of Building Inspection in the Department of Public Works by Section 74 of the Charter. Clearly, the acts of the City carried out by the Bureau of Building Inspection in the issuance of permits, supervision, and inspection of construction are sanctioned by legislative authority.

We next turn to the consideration of profit or emolument. At the hearings on the City's motions to dismiss, evidence was introduced to show that under Section 1700 of Chapter 17 of the Building Code of Baltimore City (1950 ed.) the Bureau of Building Inspection was required to charge fees and service charges in order to cover the estimated cost of the services rendered by the City. When asked whether his office complied with this requirement the Building Inspection Engineer for the

City, Commissioner Robert Dietrich, testified that the bureau was currently operating at a deficit but that he did not know what the revenue figures were at the time that St. Rose of Lima Church was constructed in 1951-52 since cost records were not kept at that time. From that evidence, this Court cannot conclude that the bureau operated as a profitmaking business. See *Reed v. Baltimore,* 171 Md. 115, 188 A. 15, where the City of Baltimore, in owning a market and deriving a revenue therefrom, was held to be acting in its proprietary or private capacity.

In its attempt to pierce the City's shield of immunity Eyring urges that the functions of the bureau relate to the citizens of the City of Baltimore and not to the State at large. In the sense that municipalities generally exercise their police power only within their territorial jurisdictions, appellant's contention is correct. However, the benefits of the building regulations extend to all persons and property who may be in the city at any time and are certainly not restricted only to its inhabitants. As stated in 7 McQuillin, *Municipal Corporations* (3d ed.), Section 24.507:

> ". . . . The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals."

Dealing with the second question, Eyring maintains that the City has not met the burden of proving its claim of governmental immunity. Again, we cannot agree with the appellant. Rule 323 b and c provides that the defense of governmental immunity shall be raised by motion before any pleading on behalf of the party making the motion is filed. As stated by this Court in *Irvine v. Montgomery County, supra,* the purpose of the rule is to have a legal question decided before trial of the action on its merits. By stipulation, the lower court was acquainted with the functions of the bureau which Mr. Dietrich

later explained under direct and cross-examination. The City introduced pertinent sections of the City Charter and the appellant introduced a volume of the Building Code. Under these circumstances, we are unable to find that the City failed to meet its burden of establishing its defense of governmental immunity. See *Madison v. Reichelt,* 158 F. Supp. 401 (D. Md.), *aff'd,* 267 F. 2d 942 (4th Cir.).

We hold that the acts of the City carried out by the Bureau of Building Inspection in the issuance of permits, supervision and inspection in connection with the construction of the St. Rose of Lima Church were the exercise of the police power to promote the safety, health, and welfare of the public and were purely governmental in nature. Further, the City is immune from liability as a result of the performance of those acts. The lower court correctly granted the City's motions to dismiss in all five cases.

*Judgments affirmed. Costs to be paid by the appellant.*