SPRIGGS ET UX. *v.* LEVITT & SONS, INC., ET AL.

[No. 127, September Term, 1972.]

*Decided January 11, 1973.*

*Motion for rehearing filed February 13, 1973; denied February 26, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Harleigh P. Ewell,* with whom were *Robert H. Law* and *Law & Ewell* on the brief, for appellants.

*Leo Wm. Dunn, Jr.,* with whom were *Nylen & Gilmore* on the brief, for Levitt & Sons, Inc., part of appellees. *Alan John Leidecker, Associate County Attorney,* with whom were *Walter H. Maloney, Jr., County Attorney, Harry L. Durity* and *John R. Barr, Associate County Attorneys,* on the brief, for Prince George's County, another appellee. *Frank W. Wilson, Special Attorney,* with whom were *Francis B. Burch, Attorney General, Nolan H. Rogers, Special Assistant Attorney General,* and *Carl Harrison Lehmann, Special Attorney,* on the brief, for State Highway Administration, other appellee.

SMITH, J., delivered the opinion of the Court.

Sick at heart and outraged when a nearby stream overflowed its banks and flooded their home after a heavy rain on July 26, 1969, appellants, Mr. and Mrs. James Spriggs (the Spriggs), a year and a half later through counsel apparently trained a shotgun in the nature of a

suit for damages against anyone and everyone who might conceivably have any possible liability for their loss.[1] They were unsuccessful in the circuit court. Here they succeed only in winning our sympathy.

The Spriggs' home is on the west side of Route 301 slightly to the north of its intersection with Mitchellville Road in Prince George's County. Their declaration alleged that drainage from approximately 158 acres of land west of Route 301 adjacent to their home flows into a small stream running in a direction approximately parallel to Mitchellville Road and between that road and their home. It passes through a culvert under Route 301 and continues in a generally easterly direction. The drainage area south of Mitchellville Road which contributes to this stream passes under the road by a pre-existing culvert and a pipe said to have been "constructed by the defendant Levitt & Sons, Incorporated" (Levitt) and installed by that corporation "before the months of July and August 1969" when it "was engaged in extensive construction in the area which drains to the creek adjacent to the [Spriggs'] home."

The Spriggs sued Levitt, the State Roads Commission, the City of Bowie, the Washington Suburban Sanitary Commission, and the Prince George's County Board of County Commissioners. Motions raising preliminary objections on the basis of governmental immunity were filed by each of the governmental bodies. These motions were granted without leave to amend. The Spriggs here challenge only the granting of the motions as to Prince George's County and the State Roads Commission, now the State Highway Administration of the Department of Transportation.

The case proceeded to trial against Levitt. The Spriggs contended in their first count that Levitt had placed a

---

1. Their action may in part be induced by the fact that the average homeowner has been unable to insure against the peril of damage by flood. The National Flood Insurance Act of 1968 as amended since this loss now makes insurance protection available in those flood prone areas in which requisite action has been taken by the local governmental body.

pipe of inadequate size under the road, thus causing the flood. A motion for directed verdict was granted at the end of the plaintiffs' case as to that count on the ground, conceded by the Spriggs, that the proof did not support that count, a point not an issue here. The second count claimed that the construction work performed by Levitt had "created large areas of bare soil, thus increasing the runoff from the area which contributed to the stream adjacent to the [Spriggs'] property," that "[t]he bare soil and the increased rate of runoff combined to increase the siltation of the said creek" and this "increased rate of runoff and the more advanced siltation of the stream . . . combined to cause the flooding which damaged the [Spriggs'] property . . . ." A jury returned a verdict in favor of Levitt.

In their appeal against Levitt the Spriggs complain only of the testimony of an expert witness produced by Levitt. He said that preliminary plans for grading and drainage were submitted to various county agencies. We find it unnecessary to pass upon the admissibility of this testimony for two reasons. First, the objection was made after the answer to the question had been given and there was no motion made to strike out what was actually an unresponsive answer, the question having been, "[W]hat did those plans consist of?" In *Greater Baltimore Consolidated Market Authority v. Duvall,* 255 Md. 90, 256 A. 2d 882 (1969), Judge Marbury said for the Court:

> "If we assume without deciding that the testimony complained of was inadmissible, the appellant waived its objection to its admission by not moving to strike out the non-responsive answer of the witness so that the alleged error, if any, has not been preserved for our consideration on this appeal." *Id.* at 94.

Secondly, without objection, virtually the same testimony came from this witness at a later time in the proceedings. Accordingly, as Judge Prescott put it for the Court in *Forrester v. State,* 224 Md. 337, 344, 167 A. 2d

878 (1961), "[I]f we assume without deciding that the evidence was inadmissible, any objection to its admission was waived by its subsequent admission without objection." *See also Hyson v. State*, 225 Md. 140, 142, 169 A. 2d 449 (1961); *Journigan v. State*, 223 Md. 405, 412, 164 A. 2d 896 (1960); and *State Roads Comm. v. Bare*, 220 Md. 91, 93-95, 151 A. 2d 154 (1959). *Cf. Baltimore & O.R.R. v. Plews*, 262 Md. 442, 470-71, 278 A. 2d 287 (1971).

Against the State Roads Commission the Spriggs claimed that the culvert under Route 301 was of insufficient size to service the drainage area, that the Commission had permitted an accumulation of debris which reduced the flow of the stream, that prior to the flooding the Spriggs informed the Commission of this blockage and after inspection its representative informed the Spriggs that nothing could be done to alleviate the condition, but after the flooding the Commission cleared the debris "which greatly reduced the tendency of the stream to flood."

Suit against Prince George's County was based upon two theories. The first was that Levitt's work had been done pursuant to permits issued by the county, that the construction and drainage pipes "were specifically approved by the County and required as part of the construction plans submitted before" Levitt was "permitted to begin construction, and that [the County] had a duty to refrain from issuing permits which would approve work which would cause damage to persons in the position of the plaintiffs, and such duty was breached by issuing permits and approving the construction performed by . . . Levitt . . . ." The second theory went out the window with the unfavorable jury verdict in the suit against Levitt since it was based on the claim that all of the work done by Levitt was as the agent of the county "in that the streets, storm sewers and drainage system were to be the property of and for the benefit of . . . Prince George's . . . County . . . ."

Although recognizing the doctrine of governmental immunity, the Spriggs urge that the law in this State "is that failure to abate a public nuisance having relation to public rights-of-way or other property owned or maintained by a *municipality* constitutes an actionable wrong," citing *Fowler v. Bd. of Co. Comm'rs,* 230 Md. 504, 187 A. 2d 856 (1963), and *Hitchins v. Frostburg,* 68 Md. 100, 11 A. 826 (1887). (Emphasis added.) We regard neither case as apposite here. If we were to assume, without deciding, that the Spriggs have alleged or could amend their declaration so as to allege that the State Roads Commission had created a public nuisance in constructing a culvert of inadequate size or had created a public nuisance by not properly maintaining the culvert, the Spriggs would not be permitted to recover. The nuisance theory is one existing with reference to municipal corporations. This is implicit in the opinion of Judge Hammond for the Court in *Fowler* and was explained by Judge Offutt in *Wynkoop v. Hagerstown,* 159 Md. 194, 150 A. 447 (1930). The State Highway Administration is not a municipal corporation. Its potential liability was considered in *State v. Rich,* 126 Md. 643, 95 A. 956 (1915). There the State Roads Commission was sued for having allegedly permitted a public highway to be open for use under such circumstances that it constituted "a dangerous nuisance" as the result of which the son of the equitable plaintiffs was killed. This Court held "that the State Roads Commission [was] not liable to the action [t]here sought to be maintained, and that the demurrer to the declaration was properly sustained," referring to the doctrine of sovereign immunity and the fact that no funds were appropriated for the satisfaction of such claims. As recently as last February in *Jekofsky v. State Roads Comm'n,* 264 Md. 471, 287 A. 2d 40 (1972), we were faced with a claim that the State Roads Commission had improperly planned and constructed Interstate 495 in Montgomery County thereby causing Mr. Jekofsky's automobile " 'to fly out of control' and to strike a steel pole on the side of the road."

In denying liability and reaffirming the doctrine of sovereign immunity Judge Barnes said for the Court:

"Quite apart from our prior decisions, it is desirable and in the public interest that any change in the doctrine of sovereign immunity should come from the legislative branch of the State Government rather than from the judicial branch inasmuch as there are fiscal considerations, administrative difficulties and other problems in balancing the rights of the State and its agencies with new possible rights of the individual citizens, which can far better be considered and resolved by the legislative branch than by the judiciary of the State." *Id.* at 474.

A point often overlooked by those who advocate the abolition by judicial fiat of the doctrine of sovereign immunity is the separation of powers mandated by Article 8 of the Maryland Declaration of Rights and the fact that, as pointed out by Chief Judge Bartol in *State v. Baltimore & O.R.R.*, 34 Md. 344, 374 (1871), "The right to sue the State was given by the Act of 1786, ch. 53, but this was afterwards repealed and the right taken away." The repeal came by Chapter 210, Acts of 1820, *State v. Wingert*, 132 Md. 605, 611, 104 A. 117 (1918), a position the General Assembly has not seen fit to change in the intervening 150 years.

The suit against the county can be no more successful. There is not even an intimation that the county owns the area in which the offending culvert was constructed. The claim against the county is entirely based upon its action in issuing permits to Levitt. We deem this case controlled by *Irvine v. Montgomery County*, 239 Md. 113, 210 A. 2d 359 (1965), where Judge Oppenheimer said for the Court:

"An actionable wrong may arise under some circumstances if a private nuisance is created as a result of grading and other building ac-

tivities which accelerate the natural flow of water and damage an adjoining property. *Battisto v. Perkins,* 210 Md. 542, 124 A. 2d 288 (1956). However, in issuing permits for construction, a municipality is only exercising its governmental authority and is immune from action against it. *Lipsitz v. Parr,* 164 Md. 222, 227, 164 Atl. 743 (1933) ; 18 McQuillin, *Municipal Corp.,* 3d ed. § 53.37; 25 Am. Jur. *Highways,* §§ 356 and 592. Even though the permits were for street construction, the municipal corporation is immune from liability for error of judgment, unaffected by negligence. *Cumberland v. Turney,* 177 Md. 297, 314, 9 A. 2d 561 (1939). Here, the bill of complaint does not allege any acts of negligence on the part of the County in approving the plan of subdivision, or any failure of the plan, in respect of streets, to conform to the specifications of the county code." *Id.* at 117-18.

Since we perceive no error, the judgments must be affirmed. We add that we are heartened by the fact that at argument we were advised that since construction in the area has been completed runoff has apparently been stabilized so that flooding no longer occurs.

> *Judgments affirmed; appellants to pay the costs.*