479 A.2d 1321

**Dick T. TADJER et al.**

v.

**MONTGOMERY COUNTY, Maryland et al.**

No. 43, Sept. Term, 1983.

Court of Appeals of Maryland.

Aug. 22, 1984.

William J. Carter, Washington, D.C. (Joel M. Savits and Carr, Jordan, Coyne & Savits, Rockville, for appellants, AFA Corporation and Guy M. Ammatucci; Read K. McCaffrey and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, for appellants, Dick J. Tadjer, Sol Saul Cooper, TCSB, Inc. and Tadjer-Cohen Associates Inspection Company, Ltd., on brief).

A. Katherine Hart, Asst. County Atty., Rockville (Paul A. McGuckian, County Atty., Robert G. Tobin, Jr., Deputy County Atty., and Clyde H. Sorrell, Asst. County Atty., Rockville, on the brief), for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

SMITH, Judge.

We shall here hold that a trial judge was only partially correct when he sustained on the grounds of governmental immunity a demurrer of Montgomery County to third-party

claims arising out of injuries sustained on a landfill formerly operated by the County.

## I

■ As indicated, this case reaches us on demurrer.[1] In considering the sufficiency of a declaration on demurrer we are required to assume the truth of all material and relevant facts that are well pleaded as well as all inferences which can be reasonably drawn from those well-pleaded facts. *Schwartz v. Merchants Mort. Co.*, 272 Md. 305, 308, 322 A.2d 544, 546 (1974); *Desser v. Woods*, 266 Md. 696, 698–99, 296 A.2d 586, 588 (1972).

Michael S. Wodoslawsky sued nine defendants as a result of injuries sustained by him on April 14, 1980, in an explosion of methane gas at his place of employment, an auto body shop, owned by one of the litigants in this case.

Defendants Dick J. Tadjer, Sol Saul Cooper, TCSB, Inc., and Tadjer-Cohen Associates Inspection Company, Ltd., filed one third-party claim against the County. Defendants AFA Corporation and Guy M. Amatucci filed another third-party claim against the County, certain of its employees, and others who are not parties to the proceeding in this Court.

The Court of Special Appeals quoted from the summary by the trial judge of the various third-party complaints:

---

1. The defense of governmental immunity is one which may be raised under Maryland Rule 323 on a motion raising preliminary objection. Rule 323 b specifies that such a motion may be filed at any time. The motion in this instance consisted only of a statement by an assistant county solicitor at the hearing on demurrer that he "would ask the Court to consider the demurrer that was filed to be a demurrer and a motion raising preliminary objection for procedural purposes." We held in *Board v. John K. Ruff, Inc.*, 278 Md. 580, 583, 366 A.2d 360, 362 (1976), and *Bd. of Education v. Alcrymat Corp.*, 258 Md. 508, 516, 266 A.2d 349, 353 (1970), "that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity in the absence of express statutory authorization, or by necessary implication from a statute . . . ."

"Defendants and third-party plaintiffs Sinicropi[2] and Tadjer in their Amended Third-[P]arty claims seek indemnification or contribution from Montgomery County as a result of the County's negligent creation of a dangerous condition by virtue of its operation of a landfill at that property which is presently designated as 801 East Gude Drive, and its subsequent failure to take necessary safeguards to protect the public from the dangers associated with property that has formerly been used as a landfill. AFA in its Second Amended Third-Party Declaration has filed three counts which the County through various procedural vehicles assails. In Count One AFA seeks indemnification or contribution from the County for the same negligent conduct complained of in the Tadjer and Sinicropi third-party claims referenced above. In Count Two AFA alleges liability on the part of the County as a result of its creation and maintenance of a continuing nuisance on the property presently designated as 801 East Gude Drive. Count Three of AFA's Second Amended Third-Party Declaration seeks indemnification or contribution as a result of the negligent conduct of six Montgomery County employees."

The trial judge and the Court of Special Appeals said that for the purpose of the motion raising preliminary objection and demurrer the County did not contest the following facts which may be gleaned from the declarations:

"1.  During that period from 1950 to approximately 1962 Montgomery County leased property located at what is presently designated as 801 East Gude Drive from a person not a party to this lawsuit. It is on this same property at what is presently designated as 801 East Gude Drive that the incident which forms the basis of this lawsuit occurred.

"2.  During the period of the lease described above Montgomery County operated and maintained a landfill.

---

2.  Sinicropi is not a party in this Court.

"3. During this period of time Montgomery County engaged in excavation and trench digging on said property, and buried the accumulated trash therein.

"4. During the year 1962 Montgomery County terminated its operation of the public landfill, and ceased to be a tenant on this property.

"5. In 1977 AFA Corporation purchased the property presently located at 801 East Gude Drive, and in 1978 applied for a building permit with Montgomery County to construct an auto-body shop on said property. Montgomery County issued the building permit, and inspected the construction of the auto-body shop. Ultimately Montgomery County issued an occupancy permit for the auto-body shop located at 801 East Gude Drive.

"6. The plaintiff in his Declaration seeks damages resulting from an explosion that occurred on said premises on April 14, 1980, which he alleges was caused by the emission of methane gas from the accumulation of trash and garbage below the property."

The trial judge and the Court of Special Appeals further summarized:

"In addition to the above stipulation of facts, the three third-party plaintiffs have alleged that by virtue of its employees' inspection of property during the review of the building permit application and construction process, Montgomery County obtained actual knowledge of the fact that the auto-body shop was being constructed over trash, refuse and garbage. The third-party plaintiffs further contend that despite having actual notice of the fact that the building was being constructed over its former landfill, the County took no steps to halt construction or recommend alternative methods of construction to protect against the dangers of methane gas. It is further alleged that during the lease of its landfill, the County

charged a fee for dumping and did derive revenue from this enterprise [3].

"The three third-party plaintiffs allege that the aforesaid ... facts, and allegations of conduct on the part of the County imposed a duty on the part of Montgomery County to take the necessary steps to protect future purchasers and invitees against the possible dangers associated with a methane gas buildup as set forth in the plaintiff-Wodoslawsky's Declaration; i.e., 1) install pipes and ventilating equipment under the ground on the property on Gude Drive, 2) to enact legislation deregulating and controlling construction on 801 East Gude Drive, 3) to alert the public by the appropriate notations on deeds, maps and other public property records that the parcel at 801 East Gude Drive had once been used by the County as a landfill."

The trial judge granted a demurrer as to the third-party claim of Tadjer et al. and the first three counts of the third-party claim of AFA et al. He found that the third-party claims against the County were barred by governmental immunity and the statute of limitations. A specific finding was made that a final judgment should be entered pursuant to the provisions of Maryland Rule 605(a).

The Court of Special Appeals affirmed the trial court's judgment in an unreported opinion. The court found it unnecessary to consider any issue other than that of governmental immunity. The intermediate court quoted liberally from the trial court opinion. We granted a petition for the writ of certiorari. We have no issue before us relative to the third count of AFA et al. against the County employees. The petition for certiorari is limited to the issue of governmental immunity. Thus our consideration here is limited to that issue and the conflict between concepts of governmental and proprietary functions.

---

**3.** This revenue was said by both third-party complaints to be "substantial income."

## II

Montgomery County has not waived governmental immunity. The County claims the landfill and the various actions connected with it are governmental in their nature. The third-party plaintiffs contend that the County was in fact carrying on a proprietary function.

As was pointed out by Judge Eldridge in his concurring and dissenting opinion in *Austin v. City of Baltimore*, 286 Md. 51, 67–70, 405 A.2d 255, 264–65 (1979), Maryland has more reason, perhaps, than most states to look to the legislative bodies for any change that may be made in the doctrine of governmental immunity since Ch. 53 of the Acts of 1786, which provided for suits against the State, was repealed by Ch. 210 of the Acts of 1820. We, therefore, have continued to recognize the doctrine. *Austin*, 286 Md. at 54–58, 405 A.2d at 257–59. *See also Board v. John K. Ruff, Inc.*, 278 Md. 580, 584, 366 A.2d 360, 362–63 (1976).

We observed in *Austin*, 286 Md. at 59, 405 A.2d at 259, in *E. Eyring Co. v. City of Baltimore*, 253 Md. 380, 382–383, 252 A.2d 824, 825 (1969), and in *Baltimore v. State*, 168 Md. 619, 625, 179 A. 169, 171 (1935), that the distinction between governmental and proprietary functions is sometimes illusory in practice. In *Baltimore v. State*, 173 Md. 267, 195 A. 571 (1937), Judge Offutt said for the Court:

"But in truth there is no universally accepted or all-inclusive test to determine whether a given act of a municipality is private or governmental in its nature, but the question is usually determined by the public policy recognized in the jurisdiction where it arises.... Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature. And it is better that the adequate performance of such an act be secured by public

prosecution and punishment of officials who violate the duties imposed upon them in respect to it than to disburse public funds dedicated to the maintenance of such public conveniences as public parks, playgrounds, hospitals, swimming pools, and beaches maintained at the public expense to private persons who have suffered loss through the negligence or default of municipal employees or agents charged with their management." 173 Md. at 275–76, 195 A. at 576.

Another way of expressing the test in a context relevant to the case at bar is whether the act performed is for the common good of all or for the special benefit or profit of the corporate entity. *See* Annot., 60 A.L.R.2d 1198, 1203 § 4[a] (1958); *City of Houston v. Quinones*, 142 Tex. 282, 286, 177 S.W.2d 259, 261 (1944).

When the County issued building permits it was clearly engaged in a governmental function. *Spriggs v. Levitt & Sons, Inc.*, 267 Md. 679, 685–86, 298 A.2d 442, 445 (1973); *Irvine v. Montgomery County*, 239 Md. 113, 117–18, 210 A.2d 359, 361 (1965), and cases therein cited. No citation of authority is required for the fact that the enactment of legislation is a governmental function. The assertion that appropriate notations should have been required on "deeds, maps and other public property records" falls into a similar category.

■ "The general rule at common law is that in collecting and disposing of garbage or rubbish a municipal corporation exercises a governmental rather than a private function, and accordingly is immune from liability for torts committed in the performance of such function." Annot., 156 A.L.R. 714, 716 (1945). *See also* 18 E. McQuillin, *Municipal Corporations* § 53.46, at 248–49 (3d ed., 1977 rev.); C. Rhyne, *The Law of Local Government Operations* § 32.19 (1980).

The third-party plaintiffs cite *Apartment House Co. v. Baltimore*, 131 Md. 523, 102 A. 920 (1917), in support of their contentions that a landfill is a proprietary function.

There the Court held the City of Baltimore liable for failing to remove ashes and household refuse from the plaintiff's premises. However, the reasoning behind that determination distinguishes it from the present case. Judge Thomas there said for the Court:

"[T]he city has a proprietary interest in its thoroughfares, and while the removal of ashes and household refuse may contribute to the public health, it also bears a close relation to the obligation of the city to keep its streets and alleys clean and free from obstructions and safe for travel. The fact that the city may by ordinance impose the cost of the removal of ashes, etc., upon property owners does not alter the nature or character of its duty to provide for such removal. *Flynn v. Canton Co.*, [40 Md. 312 (1874) ]." 131 Md. at 536, 102 A. at 924.

■ The duty to maintain streets and highways in a reasonably safe condition is a major exception to the immunity from suit in Maryland of counties and municipalities. *See Godwin v. County Comm'rs*, 256 Md. 326, 335, 260 A.2d 295, 299 (1970). In *Baltimore County v. Wilson*, 97 Md. 207, 54 A. 71, 56 A. 596 (1903), the Court said, "[T]here was no such liability at common law or by the express terms of the statute, but it was held to have arisen by necessary implication from the powers and duties of the commissioners under the several provisions of the general law." 97 Md. at 210, 54 A. at 72. There are no facts in the present case to support the application of this exception.

The fact that a fee was charged for material deposited in the landfill is not necessarily dispositive of the issue of whether this was a proprietary or governmental function. In *Austin*, 286 Md. 51, 405 A.2d 255, Judge Orth said for the Court:

"Although the fees projected when the Camp Cahill budget was proposed may have generated sufficient funds to cover day-to-day expenses of the camp, it is 'obvious,' as the Court of Special Appeals ascertained, 'that the City had a substantial capital investment in the Camp Cahill

Recreation Center, and that it was required to subsidize the day-to-day operation of the Center and the day camp.' *Id.* [*City of Baltimore v. Austin,* 40 Md.App. 557] at 570 [392 A.2d 1140 at 1147 (1978)]. We believe, as the intermediate appellate court believed, that the fees here did not result in a profit or emolument inuring to the City within the contemplation of the [*Baltimore v. State,* 173 Md. 267, 195 A. 571] guidelines." 286 Md. at 66, 405 A.2d at 263.

In *Austin* the operation of the day camp was held to be a governmental function. The fact that a fee was charged in *Eyring,* 253 Md. 380, 252 A.2d 824, for the inspection of buildings did not deter us from holding in that case that the inspection was a governmental function. In *Baltimore,* 173 Md. 267, 195 A. 571, the Court held that a fee of five cents charged for the use of the pool, a bathing suit, a locker and towels would not convert the use into a proprietary function since "in the eleven years of its existence the fees collected ha[d] never been sufficient to pay the expenses of maintaining the pool, and the deficit ha[d] been met from the general funds of the city." 173 Md. at 276–77, 195 A. at 576.

██ Procedurally, this case is unlike *Baltimore,* however. *Baltimore* was tried on its merits and this Court could make the statement we have just quoted to the effect that the operation before it was not a moneymaking proposition. This case, however, has not been tried on its merits. All we have is the fact set forth in the declarations that the County derived "substantial income" from this operation. We, of course, have no way of knowing the amount of this income. It may be great or small. If, as in *Austin* and *Baltimore,* the income was not adequate to maintain the landfill or if this income were barely adequate to cover expenses, we would agree that this landfill operation was a governmental function. On the other hand, if the income derived was in an amount substantially in excess of the County's expenses for rent, operation and the like, so that the landfill was a real moneymaking proposition, it would be a proprietary

function. Only a trial on its merits can make this determination.

■ The trial judge correctly granted a demurrer to the negligence counts because of the allegations contained therein relative to the failure to enact legislation and the assertions relative to the issuance of permits, which are governmental functions. However, no final judgment should have been entered in order that there might be a trial to develop the extent of the County's "substantial income," as well as its expenses, from the operation of the landfill. "[A]mendments are to be fully allowed to the end that cases will be tried on their merits rather than upon the niceties of pleading." *Hall v. Barlow Corporation*, 255 Md. 28, 39–40, 255 A.2d 873, 878 (1969).

### III

■ In addition to negligence, the third-party plaintiffs alleged nuisance, both public and private, as a result of the landfill operation. Both the trial court judge and the Court of Special Appeals found the action to be barred by the defense of governmental immunity. This Court has never applied a proprietary-governmental function distinction to suits against municipalities based upon nuisance, nor do courts generally make such an application. *See* Annot., 60 A.L.R.2d 1198, 1204.

Third-party plaintiffs rely upon such cases as *Taylor v. M. & C.C. of Balt.*, 130 Md. 133, 99 A. 900 (1917). *Taylor* involved a suit against Baltimore City arising out of its operation of a sewage disposal plant. The Court said the question "to be determined is whether the appellee, a municipal corporation, is liable under the facts and circumstances ... set out, which would amount to a nuisance if done by a private corporation, or individuals—even if done by legislative authority." 130 Md. at 143, 99 A. at 904. Chief Judge Boyd said for the Court:

"We find nothing in the statute under which the city is acting suggestive of an intention of the Legislature to authorize the city authorities to commit a nuisance. Nor

can it be said that the Legislature contemplated that the performance of what is authorized to be done would necessarily or even probably result in such damage to private property as the plaintiff complains of. If it had been so understood by the members of the Legislature, is it not reasonable to assume, especially as the city was authorized to extend its works into the counties, that provision would have been made for compensation of those whose properties would be injured? If then the operation of this plant be a nuisance, as the evidence of the plaintiff tends to show, we are of the opinion that the city is liable." 130 Md. at 149, 99 A. at 906.

It is important to remember that the complainant in *Taylor* was an adjoining landowner whose property was adversely affected by Baltimore City's sewage disposal plant. Accordingly, it may be wise to examine the terms private nuisance and public nuisance.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D (1979). *Accord* 3 T. Cooley, *Law of Torts* § 398 (4th ed. D. Haggard 1932); 1 F. Harper and F. James, *Law of Torts* § 1.23 at 64 (1956); W. Prosser, *Law of Torts* § 86, at 572, § 89, at 591 (4th ed. 1971); H. Wood, *The Law of Nuisances* §§ 1–3 (2d ed. 1883). On the subject of public nuisances Prosser states in § 88:

"No better definition of a public nuisance has been suggested than that of an act or omission 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.' The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public. It includes interferences with the public health, as in the case of a hogpen, the keeping of diseased animals, or a malarial pond; with the public safety, as in the case of the storage of explosives, the shooting of fireworks in the

streets, harboring a vicious dog, or the practice of medicine by one not qualified; with public morals, as in the case of houses of prostitution, illegal liquor establishments, gambling houses, indecent exhibitions, bullfights, unlicensed prize fights, or public profanity; with the public peace, as by loud and disturbing noises, or an opera performance which threatens to cause a riot; with the public comfort, as in the case of bad odors, smoke, dust and vibration; with public convenience, as by obstructing a highway or a navigable stream, or creating a condition which makes travel unsafe or highly disagreeable, or the collection of an inconvenient crowd; and in addition, such unclassified offenses as eavesdropping on a jury, or being a common scold.

"To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." *Id.* at 583–85.

Restatement (Second) of Torts § 821B states:

"Public Nuisance

"(1) A public nuisance is an unreasonable interference with a right common to the general public.

"(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

"(a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

"(b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

"(c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." *Id.* at 87.

The Restatement explains in comment g:

"Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land

by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance." *Id.* at 92.

*Burley v. City of Annapolis*, 182 Md. 307, 34 A.2d 603 (1943), concerned the propriety of the revocation of billiard table licenses by a municipal corporation. In the process of that opinion Judge Ogle Marbury said for the Court:

"Public nuisances, that is to say, those nuisances which have a common effect and produce a common damage, are usually placed in three classifications: First, those which are nuisances *per se* or by statute; second, those which prejudice public health or comfort such as slaughterhouses, livery stables, etc.; third, those which in their nature are not nuisances, but may become so by reason of their locality, surroundings, or the manner in which they may be maintained. *Dillon on Municipal Corporations*, 5th Ed., paragraph 690, Vol. II, pages 1044–1045." 182 Md. at 312, 34 A.2d at 605.

See also the discussion in *Adams v. Commissioners of Trappe*, 204 Md. 165, 169–72, 102 A.2d 830, 834–35 (1954).

■ The essence of a third-party claim is that the asserted liability of the third-party defendant to the original defendant must be for all or a part of the claim of the original plaintiff against the original defendant. Rule 315 d. *White v. Land Homes Corporation*, 251 Md. 603, 608–09, 248 A.2d 159, 162 (1968); *Allen & Whalen v. Grimberg*

*Co.*, 229 Md. 585, 586–87, 185 A.2d 337, 338–39 (1962). Accordingly, the third-party claims must be examined to ascertain whether they set forth an alleged breach of duty on the part of the County to the original plaintiff or to the public generally.

There is no allegation in the third-party declarations that any land of the original plaintiff was in any way invaded. Thus, a claim for a private nuisance is not made out. There is no assertion of any violation of law on the part of the County nor does the declaration allege a breach of a duty by the County to the original plaintiff which would fit under the Restatement's version of a public nuisance. Accordingly, it follows that a claim for a public nuisance has not been set forth. What the third-party plaintiffs have attempted to do in their nuisance counts is simply to frame an action in negligence using somewhat different terms. It follows, therefore, that the trial judge correctly sustained demurrers to the nuisance counts although for the wrong reason.

## IV

This case must be remanded to the Court of Special Appeals for consideration of the other issues raised by the third-party plaintiffs in their appeals to that court.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO ABIDE THE FINAL RESULT.

ELDRIDGE, Judge, concurring in part and dissenting in part:

I agree with the Court's judgment insofar as it orders that there be a trial on the merits. Nevertheless, I continue to adhere to the views expressed in Judge Cole's dissenting opinion in *Austin v. City of Baltimore,* 286 Md. 51, 78, 405 A.2d 255, 269 (1979), and in my concurring and dissenting

opinion in the *Austin* case, 286 Md. at 67, 405 A.2d at 263, that the governmental-proprietary distinction is an irrational basis for determining whether local governments may be held liable in tort. The governmental-proprietary distinction, which has never been expressly sanctioned by the Maryland Legislature, was adopted by this Court relatively recently in history and with little reasoning. The distinction has proven to be unsound, and it should be abandoned.

COLE and DAVIDSON, JJ., authorize me to state that they concur with the views expressed herein.