**Robert V. ADAMS, et al., Plaintiffs,**

v.

**NVR HOMES, INC., t/a Ryan Homes, et al., Defendants.**

No. H–99–846.

United States District Court, District of Maryland.

Feb. 17, 2000.

Robert Brager, Beveridge & Diamond, PC, Baltimore, MD, for plaintiffs.

Arnold M. Weiner, Snyder, Weiner, Weltchek, Vogelstein & Brown, Baltimore, MD, for Ryan defendants.

John Agar, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, for Brantly defendants.

### MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

This civil action has been brought by the members of seventeen different families who reside in a residential development known as Calvert Ridge and located in Elkridge, Howard County, Maryland. Plaintiffs have here sued certain home builders who developed, built and marketed the homes in which plaintiffs live. In their amended complaint, plaintiffs claim that their homes were built on a solid waste dump and that defendants concealed the properties' past use and contamination from them when they bought their

homes. Plaintiffs are here seeking compensatory and punitive damages as well as injunctive and other relief under the Federal Solid Waste Law and under state law. Federal question jurisdiction is asserted under 28 U.S.C. § 1331.

Fourteen of the families (the "Ryan Families") reside in homes developed, built or marketed by defendants NVR, Inc. ("NVR") and NVR Homes, Inc. ("NVR Homes"), corporate entities which do business in Maryland under the trade name "Ryan Homes". These defendants will be referred to herein as the "Ryan Defendants." Three of the families (the "Brantly Families") reside in homes developed, built or marketed by defendants Brantly Development Group, Inc. ("Brantly Development"), Brantly Management Group, Inc. ("Brantly Management") and Nantucket Island Homes, Inc. ("Nantucket"). Also named as defendants are John Liparini, who is President and Director of the corporations comprising the Brantly Defendants and Nick Liparini, a private contractor who is the son of John Liparini. All five of these defendants will be referred to herein as the "Brantly Defendants."

Plaintiffs' original complaint was filed in this Court on March 26, 1999. Both the Brantly Defendants and the Ryan Defendants filed answers to the complaint and also motions to dismiss certain counts of the complaint. After those motions had been briefed, Judge Legg permitted the parties to engage in certain preliminary discovery.[1] At a status conference held before the undersigned, leave was granted to plaintiffs to file an amended complaint so that they might address apparent deficiencies in the original complaint. Plaintiffs' amended complaint was filed on December 21, 1999. Presently pending before the Court are renewed motions filed both by the Brantly Defendants and by the Ryan Defendants seeking the dismissal of certain counts of the amended complaint. These motions have been fully briefed by the parties, and a hearing has been held in open court. For the reasons stated herein, the motion to dismiss of the Brantly Defendants will be granted in part

and denied in part, and the motion to dismiss of the Ryan Defendants will also be granted in part and denied in part.

## I

### Background Facts

The relevant facts, taken from the amended complaint and viewed in a light most favorable to the plaintiffs, are as follows. From the 1930's and continuing until the late 1950's, much of the land located in Howard County which today constitutes the Calvert Ridge residential development was the site of a sand and gravel surface mine operation (the "quarry"). As a part of this operation, pits of approximately twenty to thirty feet in depth were excavated. From time to time, solid waste was deposited in the pits and on other portions of the land. Mining operations ceased in the late 1950's.

Between the late 1950's and 1990, local businesses and individuals used the Calvert Ridge land as an unauthorized dumping ground, disposing of a variety of solid waste products in the abandoned mining pits. The solid waste deposited in the pits included, *inter alia*, the following: tires, auto parts, large appliances, construction debris, demolition debris, drums, large metallic waste, household garbage, lead bearing waste, methane generating waste, solvents and petroleum bearing waste. By 1990, the mining pits had been completely filled with solid waste.

In July of 1995, defendant Brantly Development purchased a portion of the quarry land and subsequently acquired additional parcels at the site. Beginning in 1996, defendant NVR Homes purchased from Brantly Development or other entities controlled by John Liparini portions of the quarry site.

In 1996, the Brantly Defendants and the Ryan Defendants began developing the properties owned by them for use in a residential subdivision. Before development began, all defendants were aware that solid waste was present on portions of the land. All defendants were also aware of the potential health

---

1. This case was originally assigned to Judge Legg of this Court. When Judge Legg recused himself, the case was reassigned to the undersigned judge.

and environmental hazards posed by the presence of solid waste and landfill gasses on the properties, including methane and hydrogen sulfide. Defendants were in addition aware of the structural hazards presented by the pits.

In 1996, defendants began moving the waste on the properties and grading on top of such waste. Defendants left substantial quantities of solid waste buried beneath the properties which were later sold to plaintiffs as individual lots and upon which defendants built new homes which they later sold to plaintiffs. Defendants began marketing and selling lots and new homes within the Calvert Ridge land from 1996 through 1998. The buyers of the lots and the new homes were not informed of the existence of solid waste on the properties nor of the land's former use as a quarry.

According to the amended complaint, fraudulent acts, omissions, concealment and misrepresentations were made to plaintiffs by various representatives of defendants both before and after plaintiffs' purchase of lots and homes located in the Calvert Ridge subdivision. Defendants marketed and sold lots and new homes at the Calvert Ridge location using aggressive marketing techniques designed to create an image of desirability, trustworthiness and quality for defendants' homes. None of defendants' promotional and marketing materials for the Calvert Ridge homes and properties disclosed that the site was formerly a quarry containing solid waste.

Between 1996 and 1997, Karen Hensel, Jack Rupp, Lisa Montsinger, Dennis Motsco and Catherine Taylor, all sales representatives of the Ryan Defendants, made specific fraudulent and misleading statements separately, or omitted providing material information, to several of the Ryan Home Families concerning the quality and former use of the property they were purchasing. During this same period Lavon Thaxton, a sales representative for Nantucket, and Wayne Moore, Production Supervisor for Nantucket, made separate fraudulent and misleading statements to several of the Brantly Families, or omitted providing material information concerning the former uses of the site.

John Liparini, the President, a director and a shareholder of the Brantly Defendants, falsely stated in 1997 to the Zemeir Family that defendant Nantucket was financially sound and that the Zemeir Family would be happy with the home they purchased from Nantucket at Calvert Ridge site.

It is alleged in the amended complaint that the acts and omissions of all defendants with regard to the presence of solid waste at the Calvert Ridge site were fraudulent, malicious and willful and were undertaken with reckless disregard for the health and safety of plaintiffs. According to the amended complaint, each defendant directed or actively participated and cooperated in the negligent conduct and wrongful actions and omissions of every other defendant. It is further alleged that defendants entered into an agreement, cooperated and conspired with each other to misrepresent and conceal the prior uses of the Calvert Ridge land during the marketing and sale of the properties to plaintiffs.

## II

### Plaintiffs' Claims

The amended complaint contains fourteen counts and 320 paragraphs. The claims asserted in the amended complaint and the parties involved in each claim are as follows:

*Count I*— Federal Solid Waste Law (all plaintiffs against all defendants)

*Count II*— Private Nuisance (all plaintiffs against all defendants)

*Count III*— Public Nuisance (all plaintiffs against all defendants)

*Count IV*— Trespass to Land (all plaintiffs against all defendants)

*Count V*— Fraud (¶¶ 167 through 176 - Ryan Families against Ryan Defendants, and ¶¶ 177 through 186—Brantly Families against Brantly Defendants)

*Count VI*— Concealment (¶¶ 187 through 196 -Ryan Families against Ryan Defendants, and ¶¶ 197 through 206—Brantly Families against Brantly Defendants)

*Count VII*— Negligent Misrepresentation (¶¶ 207 through 213 Ryan Families against Ryan Defendants and ¶¶ 214

through 220—Brantly Families against Brantly Defendants)

*Count VIII*— Consumer Protection—Unfair or Deceptive Trade Practices (¶¶ 221 through 230 -Ryan Families against Ryan Defendants, and ¶¶ 231 through 240 Brantly Families against Brantly Defendants)

*Count IX*— Breach of Contract (¶¶ 241 through 248—Ryan Families against Ryan Defendants, and ¶¶ 249 through 253—Brantly Families against Brantly Defendants)

*Count X*— Breach of Implied Warranties (¶¶ 259 through 268–Ryan Families against Ryan Defendants, and ¶¶ 269 through 278—Brantly Families against Brantly Defendants)

*Count XI*— Breach of Express Warranties (Ryan Families against Ryan Defendants)

*Count XII*— Negligence (all plaintiffs against all defendants)

*Count XIII*— Aiding and Abetting (¶¶ 301 through 304 -all plaintiffs against Brantly Defendants, and ¶¶ 305 through 308—Brantly Families against Ryan Defendants)

*Count XIV*— Civil Conspiracy (¶¶ 309 through 314—all plaintiffs against Brantly Defendants, and ¶¶ 315 through 320—Brantly Families against Ryan Defendants).

### III

#### *Defendants' Motions*

All the Brantly Defendants except for defendant Nantucket have moved to dismiss ten of the fourteen counts of the amended complaint. These defendants ask the Court to dismiss Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count X, Count XIII and Count XIV. Six of these counts contain allegations of fraud, namely Count V, Count VI, Count VII, Count VIII, Count XIII and Count XIV. All the Brantly Defendants except for Nantucket contend that all fraud related claims filed by plaintiffs must be dismissed under Rule 9(b), F.R.Civ.P. It is also argued that Count X must be dismissed under Rule 9(b). These

Brantly Defendants argue that where multiple defendants are involved in alleged fraud, a plaintiff must plead fraud with particularity as to each individual defendant and that, since the amended complaint is deficient in this respect, all six fraud related claims and also Count X must be dismissed.

Defendant Nantucket has joined the other Brantly Defendants in moving to dismiss five counts of the amended complaint, namely Count II, Count III, Count IV, Count XIII and Count XIV. Thus, the only fraud related claims challenged by defendant Nantucket are the claims of aiding and abetting fraud and conspiracy to commit fraud alleged in Counts XIII and XIV. All the Brantly Defendants including Nantucket also seek to dismiss Counts II, III and IV, the private nuisance, public nuisance and trespass counts.

In their motion to dismiss, the Ryan Defendants have challenged three of the fourteen counts of the amended complaint. They ask the Court to dismiss Count III, Count XIII and Count XIV. The only fraud related claims challenged by the Ryan Defendants are those alleged in Counts XIII and XIV.

### IV

#### *Applicable Principles*

It is well established that a motion to dismiss filed under Rule 12(b)(6), F.R.Civ.P., should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining whether to dismiss a complaint, this Court must view the well-pleaded material allegations in a light most favorable to the plaintiff, with the alleged facts accepted as true. 2A *Moore's Federal Practice,* ¶ 12.07 [2.–5] (2d ed.1987); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 304–21 (1990).

Rule 9(b) provides in pertinent part that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In interpreting this Rule, this Court and other

courts have held that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements. *See, e.g., Windsor Assocs., Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D.Md.1983).

■ The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud. *Pitten v. Jacobs,* 903 F.Supp. 937, 951 (D.S.C. 1995). The requirements of the Rule also apply to the manner in which the statements are false and the specific facts raising an inference of fraud. *Hammerman v. Peacock,* 607 F.Supp. 911, 915–16 (D.D.C.1985).

■ Courts have identified the following three reasons for the requirement of particularity in Rule 9(b): (1) to provide defendants with fair notice of plaintiffs' claims; (2) to protect defendants from harm to their reputation or good will; and (3) to reduce the number of nuisance or "strike" suits. *Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228, 232 (D.Md.1991). A complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal pursuant to a Rule 12(b)(6) motion. *Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir.1990). However, a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied: "(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999).

■ A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud. *Wang Labs., Inc. v. Burts,* 612 F.Supp. 441, 445 (D.Md.1984); *see also Wiener v. Napoli,* 760 F.Supp. 278, 284 (E.D.N.Y.1991) (holding that where "multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one."). Where a plaintiff is seeking to hold a defendant vicariously liable for the acts of its agents, it must allege the factual predicate for the agency relationship with particularity. *Kolbeck v. LIT America, Inc.,* 923 F.Supp. 557, 568–69 (S.D.N.Y.1996). When an agency relationship is allegedly part of the fraud, the circumstances constituting fraud on the part of the purported principal, which must be pled with particularity under Rule 9(b), include both the facts constituting the underlying fraud and the facts establishing the agency relationship. *Id.* at 569.

■ An action for civil conspiracy under Maryland law can be maintained for "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not itself illegal … [that] results in damages to the plaintiffs." *Robb v. Wancowicz,* 119 Md.App. 531, 546, 705 A.2d 125 (1998). Claims of conspiracy to commit fraud must satisfy the particularity requirements of Rule 9(b). *Doyle v. Hasbro,* 103 F.3d 186, 194 (1st Cir.1996).

■ A defendant may be held liable for aiding and abetting "if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Alleco, Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.,* 340 Md. 176, 199, 665 A.2d 1038 (1995). A claim of aiding and abetting fraud must meet the pleading requirements of Rule 9(b). *ABF Capital Mgt. v. Askin Capital Mgt., L.P.,* 957 F.Supp. 1308, 1328 (S.D.N.Y.1997).

■ When a defendant interferes with a plaintiff's interest in the exclusive possession of land by entering or causing something to enter such land, a trespass occurs. *Rosenblatt v. Exxon,* 335 Md. 58, 78, 642 A.2d 180 (1994). Generally, there must be an interference with the plaintiff's possession of the land trespassed upon. *Nissan Motor Corp. v. Maryland Shipbuilding & Drydock Co.,* 544 F.Supp. 1104, 1116 (D.Md.1982) (holding that smoke emanating from shipbuilding company's property which allegedly damaged automobile company's vehicles on adjacent property did not amount to trespass

since there was no interference with the automobile company's possession of its adjacent property). Maryland courts "have never recognized a trespass where the thing which intrudes actually entered the land during the 'trespasser's' possession and the plaintiff took possession of the land subsequent to the 'intrusion.'" *Rosenblatt,* 335 Md. at 78, 642 A.2d 180.

▪ Under Maryland law, an action lies in private nuisance where a defendant substantially interferes with plaintiff's use and enjoyment of his or her property. *Exxon Corp. v. Yarema,* 69 Md.App. 124, 148, 516 A.2d 990 (1986). Maryland courts do not recognize the right of a subsequent occupant of land to bring an action in private nuisance against a prior occupant for activities conducted on the land during the prior occupancy. *Rosenblatt,* 335 Md. at 79–80, 642 A.2d 180. In Maryland, private nuisance is a matter of strict liability. *Washington Suburban Sanitary Commission v. CAE–Link, Corp.,* 330 Md. 115, 126, 622 A.2d 745 (1993); *see also Meadowbrook Swimming Club v. Albert,* 173 Md. 641, 645, 197 A. 146 (1938). A public nuisance, on the other hand, is an unreasonable interference with a right common to the general public. *Tadjer v. Montgomery County,* 300 Md. 539, 552, 479 A.2d 1321 (1984) (*citing* Restatement (2d) of Torts § 821B). A public right is one common to all members of the general public, rather than one "peculiar to one individual, or several." *Id.* at 552, 479 A.2d 1321. A private person injured by a public nuisance may seek damages. *Whitaker v. Prince George's County,* 307 Md. 368, 379, 514 A.2d 4 (1986). Similarly, a private person may seek an injunction against a public nuisance if he owns property injured by the nuisance and "has suffered from it some special and particular damage, different not merely in degree, but different in kind, from that experienced in common with other citizens." *Hoffman v. United Iron & Metal Co., Inc.,* 108 Md.App. 117, 135, 671 A.2d 55 (1996). Where the work or finished product of a third party is inherently dangerous and constitutes a public nuisance,

such third party may be held liable for creation of the public nuisance even though the third party no longer has control of the work or product creating the public nuisance. *East Coast Freight Lines v. Consolidated Gas, Elec. Light & Power Co. of Baltimore,* 187 Md. 385, 397, 50 A.2d 246 (1946).

## V

### *Fraud Claims*

### *Counts V, VI, VII, VIII*

### *XIII and XIV*

When established principles pertaining to the requirements of Rule 9(b) are applied to the allegations of the amended complaint, this Court concludes that Counts V, VI, VII and VIII of the amended complaint must be dismissed as to defendants Brantly Development, Brantly Management, John Liparini and Nick Liparini.[2] Similarly, for the reasons stated hereinafter, Counts XIII and XIV must under Rule 9(b) be dismissed as to all Brantly Defendants and all Ryan Defendants.

▪ As previously noted, Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity. Plaintiffs must make particular allegations of the time, place, speaker and contents of the fraud related acts in their complaint. *See Windsor Assocs.,* 564 F.Supp. at 280. Moreover, where there are multiple defendants, plaintiffs must, where the gravamen of the claim is fraud, allege all claims with particularity as to each of the defendants. *See Wang Labs., Inc.,* 612 F.Supp. at 445; *Pitten,* 903 F.Supp. at 951.

Counts V, VI, and VII all allege that the Brantly Defendants acted "fraudulently and with malice, evil motive or ill will." As such, these three counts are subject to the requirements of Rule 9(b). Similarly, Count VIII asserts that the Brantly Defendants "engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of ma-

---

2. During oral argument, counsel for plaintiffs explained that Nick Liparini is being sued only under Count I.

terial facts with the intent that [plaintiffs] rely on the same in connection with the promotion and sale" of the Calvert Ridge Homes. Count VIII likewise must satisfy Rule 9(b) pleading requirements.

Count XIII alleges that both sets of defendants "assisted, supported, supplemented, instigated, advised, encouraged, aided, and abetted" each other in the commission of, among other things, "acts of fraud, concealment, [and] negligent misrepresentation." Similarly, Count XIV alleges that both sets of defendants "conspired, made agreement or had understandings with each other" and "in furtherance of their conspiracy, . . . committed acts of fraud, concealment, [and] negligent misrepresentation." Accordingly, it is evident that both of the these two counts are also subject to the requirements of Rule 9(b).

Following its review of the allegations of Counts V, VI, VII, and VIII, this Court is satisfied that they must be dismissed as to all the Brantly Defendants except Nantucket for failure to comply with Rule 9(b). The amended complaint fails to particularize how it was that these Brantly Defendants committed fraud related acts.

Plaintiffs have indeed alleged with particularity instances where two representatives of defendant Nantucket, namely Lavon Thaxton and Wayne Moore, committed fraud related acts involving the Fields Family, the Rizzo Family and the Zemeir Family. It is apparent that plaintiffs have accordingly satisfied Rule 9(b) requirements insofar as plaintiffs' claims asserted against defendant Nantucket in Counts V, VI, VII and VIII are concerned. Indeed, defendant Nantucket has recognized the adequacy under Rule 9(b) of the claims of fraud asserted against it in Counts V, VI, VII and VIII and has not moved to dismiss those Counts. However, the allegations in those Counts of the amended complaint fail to satisfy Rule 9(b) insofar as the other Brantly Defendants are concerned.

 Plaintiffs argue that representatives of defendant Nantucket were agents of the other Brantly Defendants and that plaintiffs'

fraud based claims against the other Brantly Defendants are not subject to dismissal because of the fraudulent statements and acts of representatives of Nantucket. There is no merit to this contention. Plaintiffs have failed to adequately allege an agency relationship between the Nantucket representatives and the other Brantly Defendants, as they are required to do. *See Kolbeck*, 923 F.Supp. at 568–69. While plaintiffs have alleged in general that Lavon Thaxton "acted as a representative for Nantucket . . . and other Brantly Defendants," this allegation does not satisfy Rule 9(b) insofar as it pertains to her relationship to the other Brantly Defendants because it fails to indicate with particularity the factual predicate for the agency relationship. Moreover, as the Brantly Defendants note, plaintiffs cannot plead with particularity that any agency relationship existed between Lavon Thaxton and the other Brantly Defendants because discovery to date indicates that no such relationship existed. Accordingly, this Court concludes that the allegations involving Thaxton and Moore are insufficient to satisfy Rule 9(b) insofar as they relate to the Brantly Defendants other than Nantucket.

 Similarly, plaintiffs have failed to allege any particular facts concerning statements made by John Liparini which would constitute actionable fraud undertaken on his part on behalf of the Brantly Defendants other than Nantucket. Plaintiffs focus on one conversation between John Liparini and the Zemeir Family involving the finances of Nantucket and his assurances to the Zemeir Family that they would be happy with their new home and neighborhood.[3] There is no indication that during this conversation, John Liparini was acting on behalf of any party other than Nantucket, and the allegations as pled do not suggest otherwise, considering that the conversation in question involved the finances of Nantucket and not those of any of the other Brantly Defendants. Furthermore, plaintiffs' allegations concerning the Zemeirs being "led to believe" that John Liparini and another officer of Nantucket

---

3. In any event, it is questionable whether the statements allegedly made by John Liparini amounted to actionable fraud.

were notified of the environmental sensitivities of one of the Zemier children are insufficient to satisfy Rule 9(b) because they do not state with particularity the person who led the Zemeirs to believe this in the first place. Accordingly, the allegations in the amended complaint involving John Liparini are likewise insufficient to satisfy Rule 9(b) pleading requirements insofar as the Brantly Defendants other than Nantucket are concerned.

■ This Court concludes that the general allegations made by plaintiffs against the other Brantly Defendants involving fraud related activities have not been pled with sufficient particularity. While plaintiffs have alleged that they relied upon the Brantly Defendants as a source of information concerning the Calvert Ridge properties and that the Brantly Defendants uniformly omitted placing plaintiffs on notice regarding the prior use of the Calvert Ridge site as a quarry and unauthorized solid waste dump, plaintiffs have not alleged specific facts concerning which of the Brantly Defendants they purchased their homes from. Presumably, since the specific allegations of fraud which are in fact contained in the amended complaint concerned sales representatives of Nantucket, only defendant Nantucket sold homes to the Brantly Families.[4] Plaintiffs have similarly not identified with particularity the specific fraudulent materials and information which were produced by the Brantly Defendants, nor have they alleged which one or more of the Brantly Defendants provided the materials to a particular plaintiff. Having failed to include specific allegations of fact in their amended complaint, plaintiffs have not satisfied Rule 9(b) requirements with regard to all of the Brantly Defendants except defendant Nantucket.

In opposing the motion to dismiss of the Brantly Defendants, plaintiffs contend that, since they are claiming fraud by way of concealment, and since the exact nature of the concealment committed by the Brantly Defendants' concealment is exclusively in the possession of those defendants, the inadequacy of plaintiffs' fraud pleadings should be excused. There is no merit to this argument. Unlike instances where a plaintiff has not engaged in discovery before alleging concealment claims, the plaintiffs in this case have been afforded an opportunity to undertake discovery to investigate all of its concealment claims. Having been permitted to undertake discovery before filing their amended complaint, plaintiffs have had ample opportunity to inquire into the particular role played by each of the Brantly Defendants in any alleged concealment for which plaintiffs are seeking redress. Under the circumstances here, plaintiffs cannot now claim that this Court should excuse their failure to comply with Rule 9(b). Were the Court to excuse plaintiffs' compliance with Rule 9(b) requirements under the circumstances here, it would ignore the salutary purposes of the Rule which are to provide defendants with fair notice of plaintiffs' claims, to protect defendants from harm to their reputation and good will, and to reduce the number of nuisance or "strike" suits. *See Gollomp,* 756 F.Supp. at 232.

■ Plaintiffs also argue that the mere nexus or interrelationship between Nantucket and the other Brantly Defendants, as demonstrated both by John Liparini's role as officer and shareholder of the various Brantly Defendant entities and by the fact that the Brantly Defendants provided services to one another, is sufficient to satisfy Rule 9(b) pleading requirements. This argument is similarly flawed. The Brantly Defendants, in both their corporate and their individual capacities, are separate entities. The mere interrelationship between these entities and individuals in conducting lawful activities, such as providing engineering and personnel services, is insufficient grounds to treat each one as the alter ego of the other.[5] Plaintiffs have cited no Maryland case or statutory law which supports their position.

■ All defendants, including defendant Nantucket and the Ryan Defendants, have

---

4. There is evidence in the record that the Brantly Families bought their homes from defendant Nantucket, which was the only one of the Brantly Defendants which built, marketed and sold homes in the Calvert Ridge development.

5. Counsel for plaintiffs have conceded that plaintiffs are not seeking to pierce the corporate veil of any of the Brantly corporations.

moved to dismiss Count XIII which alleges a claim of aiding and abetting fraud and Count XIV which alleges a conspiracy to commit fraud. It is well established that claims of this sort must also be pled with particularity in order to comply with Rule 9(b). *See Doyle*, 103 F.3d at 194; *ABF Capital Mgt.*, 957 F.Supp. at 1328. A review of the allegations of the amended complaint leads the Court to conclude that plaintiffs have failed to adequately plead with particularity the claims asserted in Counts XIII and XIV. Plaintiffs' amended complaint contains general allegations asserting, on information and belief, that "each defendant specifically directed or actively participated and cooperated in the negligent conduct and wrongful actions and omissions of every other defendant." Plaintiffs' have also generally alleged that, on information and belief, "defendants entered into agreements, cooperated and conspired with each other to misrepresent the prior uses of the Calvert Ridge land, and to conceal material information about the home sites in the Calvert Ridge Development during marketing and sale" of homes and properties at·Calvert Ridge.

It is apparent from a review of the allegations that plaintiffs have failed to include even one single assertion of particularized fact which would support the allegations of fraud contained in Counts XIII and XIV. Only conclusory allegations of conspiracy to commit fraud and aiding and abetting fraud are contained in those Counts.

Plaintiffs contend that the allegations in the complaint concerning the interaction between the various defendants, such as the fact that the Ryan Defendants originally bought their properties at Calvert Ridge from the Brantly Defendants and the fact that Brantly Management supplied Nantucket engineering and personnel services, are sufficient to establish that a conspiracy between the defendants to commit fraud must have existed or that aiding and abetting of fraud by the various defendants must have taken place. This contention is without merit. Plaintiffs are required to plead with particularity the circumstances surrounding any alleged conspiracy to commit fraud or any alleged aiding and abetting of fraud. All

plaintiffs have done here is allege a set of facts indicating that the defendants had legitimate business dealings with one another. These facts do not raise any inference of aiding and abetting fraud nor of conspiracy to commit fraud. Plaintiffs have not pointed to a single fact supporting their contention that all the defendants possessed an actual "agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not itself illegal." Similarly, plaintiffs have not pled with particularity a single fact demonstrating that any one defendant "by any means encouraged, incited, aided or abetted" the unlawful acts of any other defendant. Plaintiffs factual assertions concerning the legitimate activities of defendants coupled with plaintiffs conclusory allegations of conspiracy and aiding and abetting, without more, are insufficient to satisfy Rule 9(b) requirements. Accordingly, Counts XIII and XIV of the complaint will be dismissed as to all defendants.

## VI

### *Implied Warranty Claims*

#### *Count X*

The Brantly Defendants except Nantucket have also moved to dismiss Count X of the amended complaint on the ground that plaintiffs have failed to satisfy the requirements of Rule 9(b) as to that Count. This request will be denied.

In ¶ 269 through ¶ 278 of the amended complaint, the Brantly Families have asserted claims of breach of implied warranties against all the Brantly Defendants. It is alleged that the Brantly Defendants in selling the homes purchased by the Brantly Families impliedly warranted that those homes were "reasonably fit for the purpose" for which they were purchased. It is further alleged that this implied warranty was violated by the Brantly Defendants because the homes purchased were built with faulty construction materials, were not built in accordance with sound engineering standards, were not built in a workmanlike manner and were not fit for habitation.

Quite obviously, the claims asserted in Count X are based not on fraud, but on

principles of breach of implied warranty set forth in the Real Property Article of the Maryland Code. Indeed, there are no allegations of fraud anywhere in Count X. The Brantly Defendants have cited no case in which a court has held that a party asserting a claim of breach of implied warranty must comply with the requirements of Rule 9(b).

Since fraud has not been alleged in Count X, this Court concludes that plaintiffs need not comply with the requirements of Rule 9(b). Accordingly, Count X will not be dismissed.

## VII

### *Trespass Claims*

### *Count IV*

■ All of the Brantly Defendants have also moved to dismiss Count IV of the amended complaint on the ground that plaintiffs have failed to state a claim of trespass upon which relief can be granted. Plaintiffs have alleged in Count IV that defendants have caused waste and contaminants to be present on property over which they had or may continue to have possession and control. It is further alleged that each individual plaintiff's claim relates to contamination emanating from adjoining and nearby parcels formerly owned by defendants, including parcels not owned by any of the plaintiffs. According to ¶ 163, defendants have thereby interfered with plaintiffs' exclusive possession of their land.

The Court concludes that plaintiffs have not stated an actionable claim of trespass under Maryland law. For a claim of trespass to be actionable, there must be an interference with the plaintiffs' possession of the land being trespassed upon. *Nissan Motor Corp.*, 544 F.Supp. at 1116. While plaintiffs have claimed that the contamination emanating from parcels formerly owned by defendants has interfered with plaintiffs' exclusive possession of their land, the allegations of Count IV, when read together with other allegations of the amended complaint, do not establish that the invasion of plaintiffs' property by methane gas amounted to an interference with plaintiffs' exclusive possessory interest in the land. When considered in their entirety, the allegations of the amended complaint indicate that methane gas from adjoining properties interfered merely with plaintiff's use and enjoyment of their properties. Such allegations do not amount to an actionable claim of trespass. Rather, such an interference, if properly pled, would amount to a claim of nuisance rather than to a claim of trespass.

Accordingly, Count IV of the amended complaint will be dismissed as to all the Brantly Defendants.

## VIII

### *Private Nuisance Claims*

### *Count II*

■ All the Brantly Defendants have also moved to dismiss Count II of the amended complaint which alleges claims of private nuisance under Maryland law. In Count II, plaintiffs have alleged that each individual plaintiff's claim "relates to contamination emanating from adjoining and nearby parcels formerly owned by Defendants, including parcels not owned by any of the plaintiffs." It is further alleged that defendants have acted unreasonably in permitting nuisance conditions to remain on or about the Calvert Ridge properties. Plaintiffs have asserted that the presence of these conditions impacts on their homes and lives and unreasonably interferes with their use and enjoyment of their property.

It is well established that Maryland law does not provide a cause of action in nuisance to a subsequent occupant of land against a prior occupant for activities conducted on the land during the prior occupancy. *Rosenblatt,* 335 Md. at 79–80, 642 A.2d 180. The private nuisance claims asserted by plaintiffs in Count II of the amended complaint seek to impose liability on the defendants based upon alleged nuisance conditions, namely the emanation of methane gas from adjoining properties formerly owned by defendants surfacing after they had sold their properties to third parties. Plaintiffs have not alleged that the Brantly Defendants owned or controlled the properties in question at the time of the emanation of the methane gas. Under Ma-

ryland law, defendants cannot be liable for a private nuisance which emanates from property which they do not own or control.

Plaintiffs argue that the Brantly Defendants were negligent in permitting the alleged nuisance conditions to remain on or about the Calvert Ridge properties. However, strict liability and not negligence standards apply in Maryland to a claim of private nuisance. *CAE–Link Corp.*, 330 Md. at 126, 622 A.2d 745. The Court of Appeals of Maryland has refused to permit a claim based on the doctrine of strict liability to be extended to instances in which the defendant was not the owner or occupier of the land from which the abnormally dangerous activity emanated. *Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 133, 497 A.2d 1143 (1985); *Toy v. Atlantic Gulf & Pacific Co.*, 176 Md. 197, 213, 4 A.2d 757 (1939). Plaintiffs' private nuisance claims, based on contamination emanating "from adjoining and nearby parcels formerly owned by Defendants," are not actionable under Maryland law.

For these reasons, Count II of the amended complaint will be dismissed as to the Brantly Defendants.

## IX

### *Public Nuisance Claims*

#### Count III

All defendants have also moved to dismiss Count III of the amended complaint. In Count III, plaintiffs have alleged that the conditions and risks at the Calvert Ridge site posed by the presence of methane gas and by the threat of explosion from methane accumulation are the result of actions and inactions of the various defendants. It is further alleged that the threat posed by methane gas constitutes an unreasonable interference with the common right of the general public to have free access to public roads and sidewalks through the Calvert Ridge neighborhood without the threat of an explosion from methane accumulation. According to plaintiffs, they have suffered and continue to suffer harm of a different kind from that suffered by other members of the public.

This Court concludes that the allegations contained in Count III sufficiently state a private action for public nuisance. Plaintiffs have here alleged an unreasonable interference with a right common to the general public. *Tadjer*, 300 Md. at 552, 479 A.2d 1321. Plaintiffs' own properties were allegedly injured by the public nuisance, and plaintiffs have allegedly suffered special and particular damage different in kind from that experienced in common with other citizens. *Hoffman*, 108 Md.App. at 135, 671 A.2d 55.

Defendants contend that the threat of methane explosion at Calvert Ridge is unfounded and that plaintiffs' public nuisance claims should therefore be dismissed. There is no merit to this argument, which goes to the sufficiency of the evidence to be presented at the trial and not to whether plaintiffs have stated a proper claim of public nuisance for which relief can be granted.

Defendants further argue that, as prior owners of property, they cannot be held liable for a public nuisance because, under Maryland law, a strict liability standard applies to all nuisance claims. It is well established in Maryland that private nuisance is a matter of strict liability. *CAE–Link Corp.*, 330 Md. at 126, 622 A.2d 745. However, it does not appear that Maryland courts have imposed the same strict liability standard insofar as claims of public nuisance are concerned. It has been held that where the finished product of a third party constitutes a public nuisance, the third party may be held liable for creation of the public nuisance, even though it no longer has control of the product creating the public nuisance. *East Coast Freight Lines*, 187 Md. at 397, 50 A.2d 246.

Since there has been no clear expression in the Maryland law concerning the viability of a claim of public nuisance arising as a result of contamination emanating from property formerly owned by the defendant, the Court will not, at this early stage of the case, render a definitive ruling on the issue. Only motions to dismiss are pending, and the Court is satisfied that "inquiry into the facts" is "desirable to clarify the application of the law." *See Podberesky v. Kirwan*, 38 F.3d 147, 156 (4th Cir.1994) (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394

(4th Cir.1950)). The facts should be developed by way of discovery, and defendants may, if facts of record would support such a motion, address the issue at a later date by way of a motion for summary judgment.

For these reasons, Count III of the amended complaint will not be dismissed.

## X

### Conclusion

For all the reasons stated, the motion to dismiss of the Brantly Defendants' will be granted in part and denied in part, and the motion to dismiss of the Ryan Defendants will also be granted in part and denied in part. All fraud related claims of plaintiffs will be dismissed as to all Brantly Defendants except for defendant Nantucket. Counts XIII and XIV will be dismissed as to defendant Nantucket and the Ryan Defendants. Counts II and IV will be dismissed as to all the Brantly Defendants. Neither Count X nor Count III will be dismissed.

Accordingly, it is this _____ day of February, 2000 by the United States District Court for the District of Maryland,

ORDERED:

1. That the renewed motion to dismiss of defendants Brantly Development, Brantly Management, Nantucket, John Liparini and Nick Liparini is hereby granted in part and denied in part;

2. That the renewed motion to dismiss of defendants NVR and NVR Homes is hereby granted in part and denied in part;

3. That Counts V, VI, VII and VIII of the amended complaint are hereby dismissed as to all Brantly Defendants except defendant Nantucket;

4. That Counts XIII and XIV of the amended complaint are hereby dismissed as to all defendants;

5. That Counts II and IV of the amended complaint are hereby dismissed as to all Brantly Defendants;

6. That the motions of the Brantly Defendants and the Ryan Defendants to dismiss Count III of the amended complaint are hereby denied; and

7. That the motion of the Brantly Defendants to dismiss Count X of the amended complaint is hereby denied.